**Shigeko U. WOMACK, Appellant,**

v.

**Barbara Cooley REDDEN, Independent Executrix of The Estate of Dillard K. Womack, Deceased, Appellee.**

**No. 6–91–114–CV.**

Court of Appeals of Texas, Texarkana.

April 14, 1992.

**6**

Jack W. Gooding, Wyrick, Gooding & Johnson, Texarkana, for appellant.

Raymond D. Anderson, Keeney, Anderson, Miller, James & Tate, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

PER CURIAM.

Shigeko Womack appeals the judgment of the Bowie County Court which determined that she had abandoned her homestead rights in a house in which she had formerly lived. The issues concern whether there is legally and factually sufficient evidence to support the trial court's finding that both Shigeko Womack and Dillard Womack, her deceased husband, abandoned their homestead rights in a former residence before Dillard Womack died and whether the county court had jurisdiction in this case. We resolve all issues in support of the judgment and affirm.

Shigeko and Dillard Womack were married for approximately thirty-one years. In 1977, they purchased a home in Wake Village. In 1980, Shigeko Womack was transferred to Fort Worth as a result of her employment. She was transferred back to Texarkana in 1982 and lived at the Wake Village residence. She was then transferred to New Jersey and then, later in that year, transferred back to Fort Worth. Shigeko Womack has lived in a rented residence in Fort Worth since that time.

Dillard Womack suffered from poor health for several years and moved in with his sister, Amy Walgamott, in 1987. Barbara Redden helped care for Dillard Womack throughout his illness. She lived at the Womack residence in Wake Village from December 1987 until Dillard Womack's death. On or about December 15, 1987, Shigeko Womack removed most of the family furniture and memorabilia from the Wake Village residence. Dillard Womack died in 1988, and in his last will and testament left all of his property and assets to Redden, except for a sum of $5,000.00, which he left to Shigeko Womack. He also appointed Redden as the independent exec-

utrix of his estate. Shigeko Womack filed an application to set aside homestead and exempt property, and the court ruled that Shigeko Womack had abandoned the homestead on or about December 15, 1987, and that the property ceased to be the homestead of Dillard Womack at the onset of his last illness.

Shigeko Womack contends that there was no evidence, or insufficient evidence, to support the trial court's findings that Shigeko Womack abandoned her homestead rights and that the property in question ceased to be the homestead of Dillard Womack at the onset of his last illness. In reviewing a no evidence point of error, only the evidence which supports the jury's verdict may be considered; all contrary evidence must be disregarded. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *International Bank, N.A. v. Morales*, 736 S.W.2d 622, 624 (Tex.1987). When a factual sufficiency challenge is reviewed, all of the evidence is considered, including evidence contrary to the verdict. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). When the court is presented with conflicting evidence, it may choose to believe one witness and disbelieve others, or it may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). In a trial to the court, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be attached to their testimony. *Muhlbauer v. Muhlbauer*, 686 S.W.2d 366, 376 (Tex.App.—Fort Worth 1985, no writ); *see also Dalton v. George B. Hatley Co.*, 634 S.W.2d 374, 377 (Tex.App.—Austin 1982, no writ). Where the evidence is conflicting, a reviewing court is bound by findings of the trier of fact, and those findings may not be disregarded if the record discloses sufficient evidence of probative value which, with inferences properly drawn, would reasonably support the same finding. *Carroll Instrument Co. v. B.W.B. Controls, Inc.*, 677 S.W.2d 654, 657 (Tex.App.—Houston [1st Dist.] 1984, no writ).

Abandonment of a homestead requires both the cessation or discontinuance of use of the property as a homestead, coupled with the intent to permanently abandon the homestead. *Franklin v. Woods*, 598 S.W.2d 946, 949 (Tex.Civ. App.—Corpus Christi 1980, no writ). The evidence relied on as establishing abandonment of a homestead must make it undeniably clear that there has been a total abandonment with an intention not to return and claim the exemption. *Id.*

Evidence showed that Shigeko Womack had removed most of the household furnishings from the Wake Village residence in 1987. The only items left were lawn care items and large appliances. Testimony showed that Redden's living arrangements were consented to by both of the Womacks, and she was allowed to live there after Shigeko Womack had removed the furnishings. In October 1987, Shigeko Womack loaned $30,000.00 from the community checking account to David Ward for the purchase of a house in Fort Worth. Shigeko Womack currently lives in this house. Redden testified that she did not know of any instance when Shigeko Womack came back to Texarkana to see Dillard Womack after she had removed the furnishings from the house. Some evidence shows that Shigeko Womack both ceased and discontinued her use of the property as a homestead and intended to permanently abandon the homestead on December 15, 1987. There is also some evidence to support the court's finding that the Wake Village residence ceased to be Dillard Womack's homestead at the onset of his last illness. He had moved out of the Wake Village residence and into his sister's house, building a separate bedroom onto that house for himself. He also agreed that Redden could live in the Wake Village residence.

In reviewing a factual sufficiency challenge, we consider all of the evidence, including evidence contrary to the verdict. Shigeko Womack testified that she never intended to abandon the Wake Village residence as her homestead. Walgamott testified that Shigeko Womack told her that her

intent was not to abandon the homestead. Shigeko Womack testified that she had always intended to retire and live in the Wake Village residence. However, when there is conflicting evidence, the court may choose to believe one witness and disbelieve others, or it may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d at 697. Here, although there was direct testimony that Shigeko Womack never intended to abandon the Wake Village residence, there is also equally strong circumstantial evidence to support that she, in fact, did intend to abandon. She was living in Forth Worth, in a home purchased by means of a loan from the community funds. Further, Shigeko Womack removed the furnishings from the Wake Village residence in December 1987. There was also testimony that Shigeko Womack did not return to Texarkana between 1987 and Dillard Womack's death. There is factually sufficient evidence to support the court's finding that Shigeko Womack intended to abandon her homestead right to the residence.

Also, factually sufficient evidence supports the trial court's finding that Dillard Womack's homestead right ceased when he moved out of the Wake Village residence. Walgamott testified that Dillard Womack intended to return to the residence. She also testified that he had offered to have her live in the house with him. However, conflicting evidence shows that Dillard Womack did not intend to return. Dillard Womack asked Shigeko Womack to remove the furnishings from the house so that Redden could live there. He also built a bedroom onto his sister's house for his own living quarters. Enough evidence supports the court's finding that Dillard Womack's homestead right ceased when he moved out of the house due to his last illness.

■ Redden maintains that the probate court was without jurisdiction to consider Shigeko Womack's application to set aside the Wake Village residence as a homestead. Section 145(h) of the Probate Code may apply. Section 145(h) provides:

When an independent administration has been created, and the order appointing an independent executor has been entered by the county court, and the inventory, appraisement, and list aforesaid has been filed by the executor and approved by the county court, as long as the estate is represented by an independent executor, further action of any nature shall not be had in the county court except where this Code specifically and explicitly provides for some action in the county court.

TEX.PROB.CODE ANN. § 145(h) (Vernon 1980). Also, Section 271 is relied upon by Redden. Section 271 deals with exempt property to be set apart. Section 271 states:

Immediately after the inventory, appraisement, and list of claims have been approved, the court shall, by order, set apart for the use and benefit of the surviving spouse and minor children and unmarried children remaining with the family of the deceased, all such property of the estate as is exempt from execution or forced sale by the constitution and laws of the state.

TEX.PROB.CODE ANN. § 271 (Vernon 1980).

■ As long as an estate remains in the hands and under control of an independent executor, the probate court has no jurisdiction to consider a claim against the estate. *Bryan v. Bryan*, 477 S.W.2d 705 (Tex.Civ. App.—Amarillo 1972, no writ). A district court, and not a probate court, has jurisdiction of a suit against an independent executor for an accounting or partition. *In re Estate of Bateman*, 528 S.W.2d 86 (Tex. Civ.App.—Tyler 1975, writ ref'd n.r.e.).

There are certain case holdings which appear to support Redden's contention that the general purpose of Section 145 of the Texas Probate Code is to free the independent executor from the control of the court, except where the code specifically and explicitly provides otherwise. On the other hand, it is equally clear that freedom from judicial supervision over the independent administration of an estate is not complete. *See, e.g., Sweeney v. Sweeney*, 668 S.W.2d 909 (Tex.App.—Houston [14th Dist.] 1984, no writ). Section 5(e) of the Probate Code provides that all courts exercising original probate jurisdiction shall have the powers

to hear *all matters incident to an estate.*[1] This is a general grant of authority to county courts in those counties where there is no other statutory court exercising the jurisdiction of a probate court. TEX.PROB. CODE ANN. § 5(b) (Vernon Supp.1992).

When viewed in the light of these probate code provisions, it is apparent that the county court properly exercised its jurisdiction to hear and determine this matter under Section 5 of the code. There is neither a suggestion of, nor the appearance of, any county court interference with the independent administration of this estate under Section 145. The county court properly exercised its jurisdiction in determining the homestead rights of the parties.

All points of error are overruled, and the judgment is affirmed.

---

1. TEX.PROB.CODE ANN. § 5(e) (Vernon Supp.1992).