ESTATE OF Frank M. MONTAGUE, Jr. and Virginia Montague, Individually and as Executrix of the Estate of Frank M. Montague, Jr., Appellants,

v.

NATIONAL LOAN INVESTORS, L.P., Appellee.

No. 04–01–00075–CV.

Court of Appeals of Texas, San Antonio.

Dec. 19, 2001.

Rehearing Overruled Feb. 5, 2002.

John M. Castillo, Randall A. Pulman, Stumpf Craddock Massey & Pulman, P.C., San Antonio, for Appellant.

Thomas S. Harmon, Elms Harmon, L.L.C., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

CATHERINE STONE, Justice.

The Estate of Frank M. Montague, Jr. ("Estate") and Virginia Montague, Individually and as Executrix of the Estate of Frank M. Montague, Jr. ("Virginia") appeal a judgment rendered in favor of National Loan Investors ("NLI") in a suit to collect on a note. The appellants raise three issues in their brief, asserting the trial court erred: (1) in disregarding the jury's negative answer to an estoppel question; (2) in failing to disregard the jury's answer to the amount due under the note because NLI is barred by limitations from recovering the entire note balance; and (3) in refusing to segregate or limit recoverable attorney's fees. NLI asserts a cross-point contending that the trial court erred in failing to disregard the jury's answer as to whether Frank ("Frank") and Virginia had abandoned their homestead claim. We sustain the first two issues and reverse the trial court's judgment. We render judgment that the Estate and Virginia are not estopped from claiming the Montague Ranch as homestead against the enforcement of the deed of trust referenced in NLI's cause of action. We further render judgment that NLI is barred from recovering each installment payment due under the note with the exception of the March 15, 1992 installment. Although we overrule the appellants' issue regarding attorney's fees, we remand the cause to the trial court to determine: (1) the amount of attorney's fees to be awarded in view of our disposition of the damages award; and (2) the amount of damages recoverable by NLI for the March 15, 1992 installment payment.

## BACKGROUND

In the 1970's, Frank acquired land known as the Montague Ranch from his mother. In 1976, Frank subdivided a portion of Montague Ranch into thirty-two five acre lots known as Montague Ranch Estates, which were developed and sold through a corporation known as Montague Enterprises. In 1982, Frank sold to Maudeen Marks approximately 1162 acres of the Montague Ranch, retaining approximately 73 acres. As part of the sale to Marks, Frank was conveyed a house on Lake Amistad in Del Rio, Texas.

During the 1960's and 1970's Frank served as president of First National Bank of Bandera ("FNB"). Frank resigned as

president in December of 1977, but continued to serve as chairman of the board and later as a board member until his resignation on August 21, 1984.

Before resigning from the board, Frank decided to restructure his indebtedness to FNB. A Loan Officer Worksheet dated July 18, 1984, reflected that the renewal-purpose of the loan was to secure loan renewals and "to set-up on installment basis." The address listed on the worksheet for Frank and Virginia was the Montague Ranch address in Bandera, Texas. The worksheet reflected that approximately 79 acres of real estate would serve as collateral.

A Real Estate Checklist dated July 18, 1984, also listed the address for Frank and Virginia as the Montague Ranch address in Bandera, Texas. The checklist listed the legal description of the property as approximately 79 acres and improvements in Bandera County, Texas. Two other items listed in the checklist were a homestead designation and a title opinion from Glendon Roberts. The checklist indicated that FNB had received Frank's personal financial statement dated July 15, 1983. Frank's financial statement listed his "Homestead Residence" as a separate asset from the "De Logo Property—Del Rio, Texas."

A disclosure statement dated July 18, 1984, submitted in connection with the loan listed the address for Frank and Virginia as the Montague Ranch address in Bandera, Texas. The disclosure states that Frank and Virginia will be giving a security interest in real estate described as the Montague Ranch, Bandera County, Texas as part of the loan.

FNB sent its attorney, Glendon Roberts, a letter of instructions dated July 19, 1984 regarding its agreement to restructure Frank's loans. After detailing information regarding the note and other documents, the letter states:

You will need to prepare a Deed of Trust and file such Deed of Trust as designated; a Homestead Designation, disallowing this property as Homestead and stipulating the property in Val Verde County, where the Montague's [sic] presently reside, as their Homestead. I will need an Attorney's Title Opinion, as to the validity of the liens and that there are no taxes outstanding, etc.

Frank executed a real estate lien note dated July 18, 1984, in the original principal amount of $212,494.07. The note was to be paid in eight annual installments, with the first installment due on March 15, 1985, and the remaining installments due on March 15th of each year thereafter until March 15, 1992, when the last installment was due and payable. The note states that payment is secured by a Deed of Trust on 73.69 acres of land in Bandera County, Texas.

Frank and Virginia executed a Deed of Trust on the 73.69 acres. The Deed of Trust was dated July 18, 1984, was acknowledged on August 8, 1984, and was filed for record on August 16, 1984. Frank and Virginia also executed a Homestead Designation, which was acknowledged on August 16, 1984 and filed for record on September 5, 1984. The Homestead Designation designates the Lake Amistad property in Val Verde County as the homestead of Frank and Virginia. The Homestead Designation further states that Frank and Virginia have abandoned their homestead in the 73 acres of the Montague Ranch in Bandera County, Texas, and Frank and Virginia disclaim any homestead rights in that land. The Homestead Designation concludes:

Affiants further say that they now live on the above described property situat-

ed in Val Verde County, Texas, which they have designated herein as their homestead and that said property has been their homestead ever since they moved on to same in the year 1982, at which time they abandoned the 73.69 acre tract in Bandera County as their homestead.

Frank made the installments payments in 1985 and 1986. In 1986, the FDIC was appointed as receiver for FNB. Accompanying his checks for the 1987 installment is a letter to the FDIC from Frank disputing the interest payment as calculated by the FDIC. Although the interest payment was made in 1988, no principal payment was made. Frank died on August 2, 1988, and no additional payments were made on the note.

In June of 1997, Commercial Loan Services ("CLS") acquired the note. On August 25, 1997, CLS sent a notice of trustee's sale, notifying the Estate, Virginia, and Virginia's son, Frank Montague III ("Frank III") of its intent to foreclose on the Montague Ranch. No foreclosure occurred. On December 10, 1997, CLS again sent notice of its intent to foreclose. No foreclosure was pursued after CLS discovered that the Estate was in probate. Instead, CLS sued the Estate on February 26, 1998 to collect the note. In April of 1999, CLS transferred the note to NLI, and NLI substituted into the lawsuit as CLS's successor.

The trial court submitted five questions to the jury. The jury found that $296,151.31 was due and owing on the note. The jury also found that Frank and Virginia resided on the Montague Ranch on August 8, 1984, with the intent to claim it as their homestead and that they did not abandon their homestead claim on August 16, 1984. The jury further found that Frank and Virginia were not estopped from claiming the Montague Ranch as their homestead. Finally, the jury found $41,640 to be a reasonable fee for legal services in preparation of trial, plus an additional $4,000 for an appeal to the court of appeals, an additional $5,000 if application was made for writ of error to the Supreme Court of Texas, and an additional $7,000 if the writ of error was granted.

Both parties filed motions for judgment notwithstanding the verdict. The trial court granted NLI's motion with regard to jury question number 4, relating to the estoppel issue, and denied the motions as to the other jury findings. The trial court entered judgment that NLI recover the sum of $296,151.31 as the amount due on the note, plus pre-judgment interest and attorney's fees. The trial court further ordered that NLI had the right to collect its judgment consistent with the Texas Probate Code or any other applicable Texas statute.

## ESTOPPEL AND ABANDONMENT

In their first issue, the Estate and Virginia assert that the trial court erred in granting NLI's motion to disregard the jury's finding that the Estate and Virginia were not estopped from claiming Montague Ranch as their homestead. In its cross-issue, NLI contends that the trial court erred in refusing to grant NLI's motion to disregard the jury's finding that Frank and Virginia had not abandoned the Montague Ranch as their homestead.

This court reviews a judgment notwithstanding the verdict under a legal sufficiency or "no evidence" standard of review. *Komet v. Graves*, 40 S.W.3d 596, 603 (Tex. App.-San Antonio 2001, no pet.). In determining whether there is no evidence to support a jury verdict, we consider the evidence favorable to the jury's verdict and reasonable inferences that tend to support it. *Brown v. Bank of Galveston, Nat'l Ass'n*, 963 S.W.2d 511, 513 (Tex.1998); *Ko-*

*met,* 40 S.W.3d at 603. If there is more than a scintilla of evidence to support the jury's finding, a trial court errs in granting a motion for judgment notwithstanding the verdict. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990); *Komet,* 40 S.W.3d at 603.

## A. Estoppel

Whether a homestead claimant can be estopped to claim a homestead exemption based on a disclaimer depends on the circumstances. *See Miles Homes of Texas, Inc. v. Brubaker,* 649 S.W.2d 791, 793–94 (Tex.App.-San Antonio 1983, writ ref'd n.r.e.).

■ If the claimant owns only one piece of property which the claimant occupies and uses as his home, the claimant is not estopped to set up the homestead exemption notwithstanding declarations, whether written or oral, which state to the contrary. *See First Interstate Bank of Bedford v. Bland,* 810 S.W.2d 277, 283–84 (Tex.App.-Fort Worth 1991, no writ). The refusal to estop the claimant is based on the theory that the fact of actual possession and use of the property as a home is so obvious at the time of the mortgage that the lender is charged with notice of the fact of the homestead. *Id.*

■ If a claimant owns two pieces of property, but only one piece of property could have been the homestead at the time of the mortgage, the lender again cannot shut his eyes to the fact that the mortgaged premises, which was being occupied at the time the deed of trust was executed, was the only property suitable for homestead purposes. *Id.* at 284. If the court can determine as a matter of law that only one of the pieces of property was suitable for homestead purposes given the facts and circumstances surrounding the use of the properties, such as suitability for occupancy, the homestead claimant is not es-

topped from claiming the exemption despite declarations to the contrary. *Id.*

■ The ripest ground for the application of estoppel principles is where a claimant owns two or more pieces of property, each of which could constitute the claimant's homestead at the time the claimant mortgages one of the parcels for some reason other than for purchase money or improvements thereon. *Id.* A claimant may be estopped under those circumstances from claiming the homestead exemption "where physical facts open to observation lead to a conclusion that the property in question is not the homestead, the use of the property is not inconsistent with the claimant's representations that the property is disclaimed as the homestead, and the representations were intended to be and were actually relied upon by the lender." *Id.* at 285–86. Under these circumstances, "ambiguous possession" is said to exist, which may enable a lender to successfully assert estoppel. *See id.* at 284–85.

■ NLI relies heavily upon the existence of the homestead designation. However, the existence of the disclaimer by the homestead claimant only gives rise to the consideration of whether estoppel should be applied. In each of the three situations summarized above, a disclaimer had been made. The existence of the disclaimer does not conclusively establish the elements necessary to prove estoppel as a matter of law. In determining whether the trial court erred in disregarding the jury's negative answer to the estoppel question, we must examine each of the elements that NLI was required to establish in order to successfully prove its estoppel claim. If there is more than a scintilla of evidence to support the jury's refusal to find any element of the defense,

the trial court erred in disregarding the jury's finding.

One element NLI was required to establish to prevail on its estoppel defense was that the physical facts open to observation lead to a conclusion that the property in question is not a homestead. Or, as stated in the charge, NLI was required to show that NLI did not know, and had no means of knowing, the real facts. In this case, Virginia testified that she never considered leaving her home in Bandera, and the Val Verde property was used as a vacation home. Pictures of both properties were introduced into evidence. Virginia testified that mail was received at both locations. Virginia's son, George, testified that he was home from college during the summer of 1984 when the loan documents were executed, and the Montague Ranch was his home during that summer. Three other witnesses testified that Frank and Virginia always lived on Montague Ranch and never left without coming back. The bank president, Terry Morrow, testified that "as far as he knew" the Montagues moved to Val Verde; however, he never checked to see if Montague Ranch was vacated and could not state specifically when Montague Ranch was vacated. NLI relies on the title opinion of the bank's attorney, who also performed services for Frank and Virginia; however, the title opinion does not change the physical facts open to observation.

Although Frank and Virginia executed the homestead designation, evidence was presented that Frank and Virginia continued to use Montague Ranch as their homestead despite their disclaimer. The bank president, Terry Morrow, could not testify that at the time of the loan, Frank and Virginia discontinued their use of Montague Ranch. In fact, Terry Morrow testified that he did not go out and physically look at the property to see if it had been vacated.

Conflicting evidence was introduced regarding the estoppel question. In view of the applicable standard of review limiting our review only to evidence in support of the jury's finding, we conclude that more than a scintilla of evidence supported the jury's finding that the Estate and Virginia were not estopped from claiming the homestead exemption.

## B.  Abandonment

▬  Abandonment of a homestead requires both the cessation or discontinuance of use of the property as a homestead, coupled with the intent to permanently abandon the homestead. *Womack v. Redden*, 846 S.W.2d 5, 7 (Tex.App.-Texarkana 1992, writ denied). The evidence relied on as establishing abandonment of a homestead must make it undeniably clear that there has been a total abandonment with an intention not to return and claim the exemption. *Id.*

▬  The same evidence supporting the jury's finding of estoppel also supports the submission of the abandonment issue and the jury's finding that the homestead was not abandoned, including evidence of the continued use of Montague Ranch as a residence and the testimony that Frank and Virginia always lived at Montague Ranch, never leaving it without returning. In addition, the abandonment argument fails for a second reason. Assuming that the homestead designation conclusively established that Frank Jr. and Virginia abandoned their homestead on August 16, 1984, the lien arising from the deed of trust would not be validated by the abandonment. "A mortgage or lien that is void because it was illegally levied against homestead property can never have any effect, even after the property is no longer impressed with the homestead character."

*Laster v. First Huntsville Properties Co.,* 826 S.W.2d 125, 130 (Tex.1991).

### LIMITATIONS

■ In their second issue, Virginia and the Estate contend that the trial court erred in failing to disregard the jury's answer regarding the amount due under the Note. Virginia and the Estate assert that the jury's answer should have been disregarded because NLI was barred by limitations from recovering the entire balance of the note.

A judgment notwithstanding the verdict is properly entered when a legal principle precludes recovery. *Lenz v. Lenz,* 40 S.W.3d 111, 114 (Tex.App.-San Antonio 2000, pet. granted). For example, if limitations bars recovery, a JNOV is proper. *Stevenson v. Koutzarov,* 795 S.W.2d 313, 318–20 (Tex.App.-Houston [1st Dist.] 1990, writ denied).

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) provides that when the FDIC brings a contract action as a conservator or receiver, the statute of limitations is the longer of (1) the 6 year period beginning on the date the claim accrues, or (2) the statute of limitations under state law. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 567 (Tex.2001) (citing 12 U.S.C. § 1821(d)(14)(A)(i)). While FIRREA's express terms only grant this six-year limitations period to the FDIC, the Texas Supreme Court has held that the FDIC's successors in interest are entitled to the benefit of this longer period when the claim accrues before the note is conveyed by the FDIC. *Id.* at 571. However, the FDIC's successors do not receive the benefit of the FDIC's six-year limitations period if the cause of action does not accrue until after the note leaves the FDIC's hands. *Id.*

■ The resolution of the limitations issue in this appeal hinges on whether the note is secured by a real property lien. If the note is secured by a real property lien, section 16.035 of the Texas Civil Practice and Remedies Code provides that the limitations period does not begin to run until the maturity date of the last installment. *See* TEX. CIV. PRAC. & REM.CODE § 16.035 (Vernon Supp.2001). If the note is not secured by a real property lien, the claim would accrue and limitations would begin to run on each installment when it became due.[2] *Wolf,* 44 S.W.3d at 566.

In order to resolve the limitations issue, we must determine whether the note was secured by a real property lien. Because the Estate and Virginia are not estopped from claiming the homestead exemption, the lien securing the note is invalid, making the note an unsecured loan. *See Fuller v. Preston State Bank,* 667 S.W.2d 214, 219 (Tex.App.-Dallas 1983, writ ref'd n.r.e.) (noting that if lien is found invalid, transaction results in unsecured loan). An invalid lien can never have any effect. *Laster,* 826 S.W.2d at 130. Accordingly, the note was never secured by a real property lien, and limitations ran from the date each installment was due. Since the lawsuit was not filed until February of 1998, limitations ran on all installments due on or before March 15, 1991.

---

**2.** Effective January 1, 1996, the Legislature replaced the four year statute of limitations that would apply to a claim for an installment payment with a six year statute. *Whittle v. MCorp Properties,* 17 S.W.3d 718, 720 (Tex. App.-Amarillo 2000, no pet.). Because the note in this case was not conveyed until the last of the installment payments was in default, NLI would be entitled to the six year limitations period regardless of the change in the statute; therefore, an analysis of the effect of the statutory change is not relevant to our analysis. *See Wolf,* 44 S.W.3d at 571.

## ATTORNEY'S FEES

The final issue challenges the award of the attorney's fees. Virginia and the Estate contend that the trial court erred in refusing to segregate the recoverable attorney's fees and in failing to limit NLI's recovery to ten percent of the outstanding principal and interest due on the note.

### A. Segregation

■ With regard to the segregation argument, Virginia and the Estate failed to object to the submission in the jury charge of a broad attorney's fee issue. No objection was made based on the failure to segregate. Accordingly, any error in failing to segregate the fees was waived, and the trial court could only disregard the jury finding if it was unsupported by the evidence or was immaterial. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389–90 (Tex. 1997). Two attorneys were called to testify regarding the attorney's fees incurred and the reasonableness of such fees. The jury awarded less than the amount the attorneys testified had been incurred. Accordingly, the evidence supported the attorney's fee award.

### B. Contractual Limitation on Amount

■ The note provided, "in the event default is made in the prompt payment of this note when due or declared due, and the same is placed in the hands of an attorney for collection or suit is brought on same, or the same is collected through Probate, Bankruptcy or other judicial proceedings, then the makers agree and promise to pay ten percent (10%) additional on the amount of principal and interest then owing, as attorney's fees." Virginia and the Estate assert that this language caps the maximum amount of the attorney's fees that can be recovered.

In *F.R. Hernandez Const. & Supply Co. v. National Bank of Commerce of Browns-ville*, 578 S.W.2d 675 (Tex.1979), the Texas Supreme Court noted, "Texas courts do not regard agreements to pay attorney's fees based on a percentage of the unpaid balance and interest of a promissory note as absolute promises to pay the contractual amount, but as contracts to indemnify the holder of the note for attorney's fees actually incurred in collecting the principal and interest on the note." *Id.* at 676. Based on this reasoning, the court explained that an obligor can challenge the contractual percentage as being unreasonable. *See id.* at 676–677. The court does not discuss whether a holder of the note can seek to recover an amount in excess of the contractual provision.

In *Farm Credit Bank of Texas v. Snyder Nat'l Bank*, the Eastland court of appeals appears to have recognized that a holder of a note can seek to recover "reasonable" attorney's fees in excess of the contractual note percentage. 802 S.W.2d 709, 715–16 (Tex.App.-Eastland 1990, writ denied). In that case, Snyder National Bank was held to have a lien that was superior in interest to the interest of Farm Credit Bank of Texas in the debtors' property. *Id.* at 710. Farm Credit Bank sought to challenge the amount of attorney's fees to be awarded Snyder in connection with the foreclosure of its lien. *Id.* at 714. The court held that Farm Credit Bank had standing to challenge the reasonableness of the attorney's fees because the fees would be deducted from the proceeds of the foreclosure sale, reducing the amount of proceeds subject to the Farm Credit Bank's interest. *Id.* The court noted that Snyder was seeking recovery of reasonable attorney's fees in an amount "which is far in excess of the percentage authorized by the note." *Id.* at 716. The court did not reject the availability of such recovery but simply concluded that Snyder had the burden of pleading and proving

what would be a reasonable fee for the services rendered in collecting the note. *Id.*

A contrary view is taken by two other appellate courts. In *Coastal Shutters & Insulation, Inc. v. Derr,* 809 S.W.2d 916, 922–23 (Tex.App.-Houston [14th Dist.] 1991, no writ), the trial court found that the holder incurred $27,000 in reasonable and necessary attorney's fees; however, the trial court held that the contractual note provision limited the recovery to 10% of the balance due and owing on the note. The note provided for "Attorney's fees of ten percent of the amount of principal and interest thereon, if placed in the hands of an attorney for collection, . . ." *Id.* at 918. The appellate court rejected the holder's complaint that the trial court erred in limiting her recovery of attorney's fees. *Id.* at 922. The court held that the contractual percentage limited the award of attorney's fees because the basis of the lawsuit was the note even though the petition contained allegations that a reasonable attorney's fee was an amount in excess of the stipulated percentage. *Id.* at 922–23.

Justice Murphy dissented from the majority decision in *Derr,* noting that the Texas Supreme Court has held that an agreement to pay attorney's fees based on a percentage of unpaid principal and interest is regarded as a contract to indemnify the holder for the expenses actually incurred. 809 S.W.2d at 923 (Murphy, J., dissenting). Justice Murphy asserted:

Without citation to authority, the majority in this case implicitly holds that the above rule is applicable only where the obligor on a note challenges the reasonableness of a fixed percentage attorney's fee, and that it cannot be applied so as to allow the holder of a note to collect attorney's fees in excess of those provided by the terms of the note. I find no support for this argument either in logic or in law. The supreme court has held that agreements to pay attorney's fees based on a percentage of unpaid principal and interest must be considered as "contracts to *indemnify* the holder of the note for attorney's expenses *actually incurred* in collection the principal and interest on the note." *F.R. Hernandez Construction,* 578 S.W.2d at 676 (emphasis added); *see Shook,* 653 S.W.2d at 282. The express language of these holdings does not limit the application of this rule to cases where the obligor on a note seeks to pay less than the agreed upon fixed percentage fee, and I find no grounds to imply such a limitation.

*Id.* at 923 (Murphy, J., dissenting).

The Beaumont court also has concluded that the note provision limits the amount of attorney's fees that may be recovered. *See Matherne v. Carre,* 7 S.W.3d 903, 908 (Tex.App.-Beaumont 1999, pet. denied). In *Matherne,* the court reasoned, "Where, as here, the note provides for attorney's fees of 'ten per cent [10%] additional on the amount of principal and interest then owing,' the attorney's fee to which one is entitled is limited to that amount." 7 S.W.3d at 908. The only authority cited by the Beaumont court to support this assertion is *1488, Inc. v. Philsec Inv. Corp.,* 939 F.2d 1281, 1282 (5th Cir.1991). Although the Fifth Circuit stated in *1488, Inc.* that "attorney's fees must be limited as defined by the terms of the promissory note," the Fifth Circuit cited no Texas case law to support this assertion. 939 F.2d at 1292.

We hold that if the obligor can challenge the reasonableness of the attorney's fees despite the contractual provision, the holder is also able to prove that a reasonable attorney's fee exceeds the contractual percentage in view of the Texas Supreme Court's holding that the provision is regarded as an agreement to indemnify the

holder for expenses actually incurred. In this case, the pleadings include a request for contractual and reasonable attorney's fees, and the prayer requests an award of reasonable attorney's fees.

## CONCLUSION

We sustain the first two issues and reverse the trial court's judgment. We render judgment that the Estate and Virginia are not estopped from claiming Montague Ranch as homestead against the enforcement of the deed of trust referenced in NLI's cause of action. We further render judgment that NLI was barred from recovering each installment payment due under the note with the exception of the March 15, 1992 installment. Although we overrule the issue raised regarding attorney's fees, we remand the cause to the trial court to determine: (1) the amount of attorney's fees to be awarded in view of our disposition of the damages award; and (2) the amount of damages recoverable by NLI for the March 15, 1992 installment payment.