

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-20-00230-CV

Kristen **SULLIVAN** d/b/a Celia's Closet,
Appellant

v.

Joe Mathews **POUND** and the Estate of Celia H. Pound,
Appellees

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 17161A
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:       Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Beth Watkins, Justice

Delivered and Filed: August 25, 2021

AFFIRMED

Kristin Sullivan appeals a take-nothing judgment rendered on her claims against Joe

Mathews Pound ("Pound") and the Estate of Celia H. Pound.[1]  In her sole issue, Sullivan argues

---

[1] We note that Sullivan filed suit against the Estate of Celia H. Pound and this designation is reflected in the trial court's judgment.  We recognize the estate of a deceased person is not a legal entity and cannot be sued as such. *Henson v. Est. of Crow*, 734 S.W.2d 648, 649 (Tex. 1987).  "A suit seeking to establish the liability of an estate should be filed against the personal representative" of the estate. *Miller v. Est. of Self*, 113 S.W.3d 554, 556 (Tex. App.— Texarkana 2003, no pet.).  "However, in those instances where the suit names the estate, rather than the personal representative of that estate, the trial court will be vested with jurisdiction if the personal representative is served with citation and participates in the suit in his or her capacity as the personal representative of the estate." *Id.* at 557.  "In such circumstances, the resulting judgment will be valid even if it names the estate rather than the personal representative in his or her official capacity." *Id.*; *see also Est. of C.M. v. S.G.*, 937 S.W.2d 8, 10 (Tex. App.—Houston [14th Dist.] 1996, no writ) ("A judgment against an estate individually is not necessarily void, however, if the personal representative of the estate appears in or participates in the lawsuit.").  Here, Pound was served with citation as the

the trial court erred when it denied her motion to disregard a jury finding that she should have discovered the alleged wrongful conduct by December 31, 2012, a date outside the applicable statutes of limitations. We affirm the trial court's judgment.

## BACKGROUND

Pound and Celia H. Pound ("Celia") (collectively "the Pounds") owned and operated a boutique store called Celia's Closet. Sullivan started working at Celia's Closet when she was thirteen years old and continued to work at the store through college as her schedule permitted. In 2010, after Celia was diagnosed with cancer, the Pounds decided to list Celia's Closet for sale.

Sullivan informed Celia she was interested in purchasing Celia's Closet and Celia directed her to the listing broker who provided Sullivan with a business packet containing information about the business, including financial statements and a business summary. Sullivan reviewed the information with her grandmother, a successful businesswoman, and subsequently executed a letter of intent to purchase Celia's Closet on June 21, 2011. Sullivan purchased Celia's Closet on July 28, 2011.

Shortly after Sullivan took ownership of Celia's Closet, the business began to falter and struggled with cash flow. In 2015, Sullivan hired a business consultant and began reviewing the financial information that had been provided by the Pounds before she purchased the business. Sullivan discovered errors and discrepancies in the information and claimed these errors misrepresented the financial health of the business. Celia's Closet continued to lose money and Sullivan had to close the business in 2017.

---

personal representative of the Estate of Celia H. Pound. In addition, Pound participated in the suit in his capacity as the personal representative of the estate when he filed an answer to the lawsuit "as Independent Executor of the ESTATE OF CELIA H. POUND" and continued to engage in that capacity throughout the case. *See Price v. Est. of Anderson*, 522 S.W.2d 690, 692 (Tex. 1975) (holding the personal representative of an estate appeared and participated in the case when the personal representative answered and engaged in the case in his capacity as personal representative of the estate). While we are aware the estate is not an entity that can be sued, we use the term "estate" only as a shorthand reference to Joe Mathews Pound as the independent executor of the Estate of Celia H. Pound.

On February 17, 2017, Sullivan filed suit against Pound and the Estate of Celia H. Pound (hereinafter, "Pound and the estate") for breach of contract, promissory estoppel, unjust enrichment, common law fraud, fraudulent inducement, breach of fiduciary duty, and negligent misrepresentation.[2] Pound and the estate pled the affirmative defense of limitations. Sullivan pled the discovery rule, asserting the statutes of limitations for her causes of action were tolled until she discovered the Pounds' wrongful conduct in 2015.

The case was tried before a jury. The jury found in favor of Sullivan on her claims for promissory estoppel, breach of fiduciary duty, and negligent misrepresentation and awarded her damages. However, in response to question 18 of the jury charge, the jury found that Sullivan, in the exercise of reasonable diligence, should have discovered the Pounds' wrongful conduct by December 31, 2012.[3] Sullivan filed a motion to disregard the jury's answers to question 18, arguing the date determined by the jury was not supported by the evidence. The trial court denied Sullivan's motion to disregard the jury finding, determined Sullivan's causes of action were barred by the applicable statutes of limitations, and rendered a take-nothing judgment on all her claims. This appeal followed.

## DISCUSSION

In her sole issue, Sullivan argues there is no evidence supporting the jury's finding that she should have discovered the Pounds' wrongful conduct by December 31, 2012, and the trial court

---

[2] Negligent misrepresentation was added later when Sullivan amended her petition.
[3] Question 18 stated:

> By what date should Kristen Sullivan, in the exercise of reasonable diligence, have discovered either or both of the Pounds['] wrongful conduct, if any?
>
> Answer with a date in the blank below.
>
> Answer as to Joe Mathews Pounds:  _____
>
> Answer as to Celia Pound:  _____

should have disregarded this finding. Sullivan's argument is premised on the assertion that there must be evidence supporting the jury's determination of the date certain: December 31, 2012. Sullivan contends defense counsel's closing argument was the only reference at trial to December 31, 2012. Sullivan argues that—because counsel's jury argument is not evidence—the jury's finding is not supported by the evidence.

Pound and the estate counter that Sullivan's own testimony establishes she had the information to discover the wrongful conduct, if any, on or before January 1, 2012. They further argue the jury drew the reasonable inference that Sullivan should have been able to discover the alleged misrepresentations within one year of obtaining all the necessary information. Thus, Pound and the estate argue, the evidence is legally sufficient to support the jury's finding and the trial court properly denied Sullivan's motion to disregard jury findings.

*Standard of Review*

"The denial of a motion to disregard a jury finding is reviewed as a no-evidence or legal sufficiency issue." *Bell v. Castro*, No. 04-11-00927-CV, 2012 WL 5874322, at *3 (Tex. App.—San Antonio Nov. 21, 2012, no pet.) (mem. op.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). We determine if legally sufficient evidence supports a finding by "view[ing] the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 807; *Est. of Montague v. Nat'l Loan Invs., L.P.*, 70 S.W.3d 242, 246 (Tex. App.—San Antonio 2001, pet. denied) ("In determining whether there is no evidence to support a jury verdict, we consider the evidence favorable to the jury's verdict and reasonable inferences that tend to support it."). "Evidence is legally insufficient when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove

a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *Bell*, 2012 WL 5874322, at *3 (citing *City of Keller*, 168 S.W.3d at 810).

*Applicable Law*

"Many of our Texas statutes of limitations . . . provide that a person must bring suit for the specified cause of action not later than the applicable number of years after the day the cause of action accrues." *Draughon v. Johnson*, No. 20-0158, 2021 WL 2387430, at *4 (Tex. June 11, 2021) (quotations and alterations omitted). Sullivan's causes of action were all subject to either the four-year or two-year statute of limitations. *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (holding the general four-year statute of limitations applies to actions for breach of contract); *Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836 (Tex. App.—Dallas 2011, no pet.) ("A promissory estoppel cause of action is governed by a four-year statute of limitations."); TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a) (stating actions for fraud and breach of fiduciary duty are governed by a four-year statute of limitations); *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (acknowledging actions for unjust enrichment and negligent misrepresentation are governed by a two-year statute of limitations).

"The discovery rule is a 'limited exception' to the general rule that a cause of action accrues when a legal injury is incurred." *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018). "[W]hen the discovery rule applies, accrual is tolled until a claimant discovers or[,] in the exercise of reasonable diligence[,] should have discovered the injury and that it was likely caused by the wrongful acts of another." *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998). "But once these requirements are satisfied, limitations commence[], even if the plaintiff does not know the exact identity of the wrongdoer." *Id.*

*Analysis*

Pound and the estate do not contest the applicability of the discovery rule to Sullivan's causes of action. Instead, the parties disagree on whether there is sufficient evidence to support the jury's finding that Sullivan, in the exercise of reasonable diligence, should have discovered the Pounds' wrongful conduct by December 31, 2012.

At the outset, we note Sullivan has not directed us to any authority, nor have we found any, requiring direct evidence of the exact date chosen by the jury in response to a jury question on the discovery rule. Without authority requiring direct evidence of a date certain, "[w]e must determine, 'whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.'" *Bell*, 2012 WL 5874322, at *3 (quoting *City of Keller*, 168 S.W.3d at 827). Here, we review evidence of the alleged wrongful conduct that form the bases of Sullivan's causes of action and determine whether there is sufficient evidence to support the jury's finding that Sullivan should have, in the exercise of reasonable diligence, discovered the wrongful conduct by December 31, 2012.

At trial, Sullivan testified that the Pounds committed the following wrongful acts in relation to the sale and purchase of Celia's Closet:

1. In the financials provided to Sullivan, the discounts from a discount program were improperly calculated as sales and revenues.

2. The Pounds failed to disclose expenses Celia's Closet would incur from promotional programs the business was required to participate in by certain vendors.

3. The Pounds excluded shipping expenses from the financials they provided Sullivan before she purchased the business.

4. The Pounds did not disclose travel expenses associated with going to market and trade shows.

5. The financials excluded expenses for inventory taxes, and Sullivan was not made aware of existing inventory tax liabilities before she purchased Celia's Closet.

6. The financials did not include all the utility expenses the business would incur.

7. The Pounds misrepresented Celia's Closet's profitability because "sometimes [the Pounds] didn't pay the rent."[4]

8. The Pounds misrepresented the value of the fixtures in Celia's Closet that were purchased by Sullivan because "they really weren't worth as much as [she] paid for them" and she "couldn't take the fixtures and furniture out of the building."

9. The Pounds misrepresented the value of the inventory because many of the items were placed on sale, at or below cost, before the parties closed.

10. Sullivan was provided with an inaccurate representation of revenues because Celia's personal purchases and barters with other shop owners were improperly reflected as sales even though the business never actually received cash for these transactions. In addition, Celia made more personal purchases than she disclosed.

On cross examination, however, Sullivan admitted she could have discovered each of these instances of wrongful conduct on or before January 1, 2012. Sullivan admitted she was aware of the discount program before purchasing the business and Celia's QuickBooks data did not show an expense category for the discount program. Moreover, Sullivan acknowledged she categorized the discounts as expenses and could have compared her financials with the financials she received from Celia as early as January 1, 2012. Sullivan further admitted, by January 1, 2012, she was "aware of all the[] expenses" associated with vendor promotional programs as well as the shipping costs that were excluded from the financial statements.

Additionally, during cross-examination, Sullivan testified she went to market "[w]ithin the first three weeks of owning the business" and was aware of these travel expenses by January 1, 2012. As to the inventory taxes, Sullivan acknowledged she had to pay the undisclosed inventory taxes in late 2011 and was, therefore, aware of inventory tax expenses by January 1, 2012. Sullivan

---

[4] The Pounds owned the building that housed Celia's Closet.

further testified she knew what her utility expenses were within the first two months of taking ownership of the business and conceded—"at the very latest, by [January 1, 2012]"—she could have compared her utility expenses to the utility expenses on the financial statements she received from the Pounds. When asked about rental expenses, Sullivan admitted the Pounds disclosed annual rent of $57,600 as an expense in the financials they provided to Sullivan prior to her purchase of the business. Moreover, Sullivan testified she negotiated rent at the lesser rate of $36,000 annually, admitted she was aware she would have to pay rent, and acknowledged she knew—"prior to [January 1, 2012]"—how this expense would affect the business.

Finally, during cross-examination, Sullivan admitted she had the right to inspect the fixtures to determine their value and quality and "could have determined that [she] overpaid" for the fixtures before January 1, 2012. Regarding the inventory, Sullivan admitted she was aware some of the inventory she bought was placed on sale before the closing. Sullivan further admitted she could have run reports prior to January 1, 2012, that would have revealed the discrepancies resulting from Celia's personal purchases and barters, but she never ran the reports.

On appeal, Sullivan argues she did not discover the Pounds' wrongful conduct until after a business consultant brought discrepancies to her attention in 2015. However, the discovery rule would only operate to toll the statute of limitations until Sullivan discovered or, *in the exercise of reasonable diligence, should have discovered* the Pounds' wrongful conduct. *See Childs*, 974 S.W.2d at 40. Sullivan's own testimony established she had all the necessary information to discover the Pounds' alleged wrongful conduct by January 1, 2012. Based on Sullivan's testimony, a rational juror could infer that a person exercising reasonable diligence should have discovered the Pounds' wrongful conduct within a year of having all the necessary information to discover that wrongful conduct. *Est. of Montague*, 70 S.W.3d at 246 ("In determining whether there is no evidence to support a jury verdict, we consider the evidence favorable to the jury's

verdict and reasonable inferences that tend to support it."). Viewing the evidence in the light favorable to the verdict, we conclude the evidence is legally sufficient to support the jury's finding that Sullivan should have discovered the Pounds' alleged wrongful conduct by December 31, 2012. *See City of Keller*, 168 S.W.3d at 807. Sullivan's sole issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Irene Rios, Justice