Charles DURAN, Individually, and Christie Jean Patterson, Individually and as Guardian of the Person and Estate of Charles Duran, and Patresa Duran Gilbert, Trustee of The Duran Family Trust, Appellants,

v.

E.G. HENDERSON and Betty Henderson, Appellees.

No. 06–01–00053–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 31, 2002.

Decided Feb. 22, 2002.

Rehearing Overruled March 19, 2002.

Ron Adkison, Wellborn, Houston, Adkison, Sadler & Hill, Henderson, for appellant Charles Duran.

J. Paul Nelson, Henderson, for appellant Patresa Duran Gilbert.

Garry Lewellen, McMillan & Lewellen, PC, Stephenville, Clay Wilder, PC, Henderson, for appellees.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA"), the trial court, after a bench trial, rendered judgment for E.G. Henderson and Betty Henderson, setting aside allegedly fraudulent real estate conveyances by Charles Duran. Charles Duran, Christie Jean Patterson, Individually and as Guardian of the Person and Estate of Charles Duran, and

Patresa Duran Gilbert, Trustee of the Duran Family Trust (hereafter collectively Duran) appeal, raising two primary issues: whether TUFTA is a statute of repose that extinguished the Hendersons' cause of action, or whether it is a statute of limitations; and whether a conveyance of homestead property done with the intent to defraud creditors may be set aside as fraudulent pursuant to TUFTA.

The Hendersons have brought three suits against Charles Duran and the other appellants. In the first suit, they obtained a judgment against Charles Duran awarding them a one-half interest in the net proceeds of a $300,000.00 note receivable. Several years after obtaining this first judgment but before the note's maturity date, the obligor on the note paid the note in full to Charles Duran. Despite the judgment, however, Charles Duran did not pay the Hendersons their one-half of the note proceeds. At about this time (the exact time is in dispute), Charles Duran conveyed two parcels of real property and transferred certain monies out of his name. Later, Charles Duran was declared *non compos mentis*, and his daughter, Christie Jean Patterson, was appointed guardian of his person and estate. After Charles Duran failed to pay the Hendersons their one-half share of the note proceeds, they brought a second suit against him for conversion and to recover the money. Again they were successful. The Hendersons contend that during the taking of depositions for the second suit, they learned for the first time about the allegedly fraudulent property conveyances that Charles Duran had made. They then brought the third and present suit. In the present suit, the Hendersons sought to set aside the allegedly fraudulent conveyances made by Charles Duran to Christie Patter-

son and the family trust; to subject the property covered by these conveyances to a lien; to have the lien foreclosed; to have the property sold in satisfaction of the debt Charles Duran owed to the Hendersons; and to obtain certain monies held in a bank account by Charles Duran or for his benefit. The trial court rendered judgment for the Hendersons, setting aside all of the challenged property conveyances but ordering only part of the real property sold. The court also ordered the bank account funds seized.[1]

On appeal, Duran argues that the trial court had no jurisdiction to entertain the Hendersons' suit; there was insufficient evidence to support the court's findings concerning Charles Duran's debt to the Hendersons and his intent to defraud, delay, or hinder the Hendersons; Charles Duran did not waive his homestead rights in the property he transferred to the family trust; and all of the real property conveyed was homestead property and as such is not subject to TUFTA. For the reasons that follow, we find that, although all of the Hendersons' claim was not extinguished and thus the trial court properly exercised jurisdiction over the matter, the property that Charles Duran conveyed was homestead property at the time of the conveyances, and as such was not subject to TUFTA. We therefore reverse that portion of the judgment that ordered the conveyances set aside and part of the underlying property sold. As Duran does not challenge the seizure of monies, that portion of the judgment is affirmed.

■ A fraudulent conveyance is a transfer by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach. *See Nobles v. Marcus*, 533 S.W.2d

---

1. Charles Duran died shortly after the trial court's judgment *nunc pro tunc* was rendered but before the court's findings of fact and conclusions of law were entered.

923, 925 (Tex.1976). TUFTA creates a statutory cause of action through which a creditor may seek recourse against a fraudulent conveyance. *See* TEX. BUS. & COM.CODE ANN. § 24.001, et seq. (Vernon 1987 & Supp.2002); *Connell v. Connell,* 889 S.W.2d 534, 542 (Tex.App.—San Antonio 1994, writ denied).

Duran's first complaint is that the trial court lacked subject matter jurisdiction to render judgment for the Hendersons because their TUFTA claim was extinguished before they filed suit. The Hendersons' original petition, filed April 27, 2000, did not specify that they were seeking relief under TUFTA. Duran argued before the trial court that they thought the Hendersons were suing under the common law, but found out they were in fact suing under TUFTA after reading the Hendersons' trial brief on the morning of trial. On discovering this, Duran filed a supplemental answer that day asserting that the Hendersons' TUFTA claim had been extinguished before the filing of the case and the court, therefore, had no jurisdiction over the matter. The court struck the supplemental answer as untimely filed.

The trial court found that Charles Duran violated Section 24.005 of TUFTA, which covers transfers of property made with actual intent to hinder, delay, or defraud a creditor. *See* TEX. BUS. & COM.CODE ANN. § 24.005(a)(1). With certain exceptions not applicable here, a claim alleging such a violation is extinguished if it is not brought within four years of the transfer

sought to be voided or, if later, within one year of the time when the transfer was or could reasonably have been discovered by the claimant. *See* TEX. BUS. & COM.CODE ANN. § 24.010(a)(1). Duran argues that, unlike an ordinary statute of limitations, the limitations provision of TUFTA provided in Section 24.010 is substantive law, not a procedural mechanism, and cannot be waived. As such, Duran argues, the court had no discretion to strike the pleading and no jurisdiction to render judgment for the Hendersons.

The Uniform Fraudulent Transfer Act ("UFTA") was approved by the National Conference of Commissioners on Uniform State Laws in 1984, *see* UNIF. FRAUDULENT TRANSFER ACT, 7A–2 U.L.A. 266, 267 Historical Notes (1999); TEX. BUS. & COM.CODE ANN. § 24.010 Historical Note, and was adopted by the Texas Legislature in 1987. *See* TEX. BUS. & COM.CODE ANN. § 24.001, et seq. Although not characterized as such, the substance of Duran's first argument is that Section 24.010 is a statute of repose rather than a procedural statute of limitations and, as such, cannot be waived.[2]

■■■■ A statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action. *First United Methodist Church v. United States Gypsum Co.,* 882 F.2d 862, 865–66 (4th Cir.1989). A statute of repose, on the other hand, creates a substantive right in those protected to be free from liability after a legislatively-determined period. *See*

---

**2.** A statute of repose in a general sense is a legislative enactment that sets a period of time within which an action may be brought. A statute of limitations is technically a category of repose statute. *See* BLACK'S LAW DICTIONARY 1423 (7th ed. 1999). However, we will follow the conceptually more precise practice of referring to "statute of repose" as a distinct type of statute different in purpose and implementation from a statute of limitations. *See*

Susan C. Randall, *Due Process Challenges to Statutes of Repose,* 40 SW.L.J. 99–7, 1002 (1986); *see also* Francis E. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 AM. U.L.REV. 579 (1981) (describing several different definitions of statute of repose and the inconsistent use of these definitions by courts and commentators).

*Crandall v. Irwin,* 139 Ohio St. 253, 39 N.E.2d 608, 610 (1942) (citing 19 AM. & ENG. ENCY. LAW 150 (2 ed.)). While statutes of limitations operate to bar the enforcement of a right, a statute of repose takes away the right altogether after the specified time period has expired. *See Texas Gas Exploration Corp. v. Fluor Corp.,* 828 S.W.2d 28, 32 (Tex.App.—Texarkana 1991, writ denied).

■ The drafters of the original UFTA intended that the extinguishment provision be enforced as a statute of repose rather than as a traditional waiveable statute of limitations. The goal of the provision is to "mitigate the uncertainty and diversity that have characterized the decisions applying statutes of limitations to actions to fraudulent transfers and obligations." UNIF. FRAUDULENT TRANSFER ACT § 9, 7A–2 U.L.A. 266, 359 cmt. (1999). The means of securing that goal effectuated by the provision is to ensure that the "lapse of the statutory periods prescribed by the section bars the right and not merely the remedy." *Id.* In so doing, unlike a traditional statute of limitations, the extinguishment provision places a substantive condition on the accrual of a fraudulent transfer action. *United States v. Bacon,* 82 F.3d 822, 823–24 (9th Cir.1996). The provision abolishes the right to bring a fraudulent transfer action if the action is not brought within the established time limits. Although it appears that no Texas court has considered this particular issue, we can find no reason to construe Texas law any differ-

ently than the drafters of UFTA intended. We find that Section 24.010 operates as a statute of repose rather than as a procedural statute of limitations. A claim must be brought within the statutory time limitations or it may not be brought at all.

■ Charles Duran conveyed two parcels of real property. He conveyed the first parcel, which consisted of approximately 165 acres,[3] to the Duran Family Trust on November 28, 1995, specifically excluding and reserving one acre and the house as his homestead.[4] Then, on July 10, 1996, Duran conveyed this one acre and house to his daughter, Christie Patterson, specifically reserving to himself a life estate. The Hendersons alleged, and the trial court found, that it was in October of 1999, during depositions for the second suit against Charles Duran for conversion and recovery of the proceeds of the note, that the Hendersons learned for the first time about these conveyances. The Hendersons filed their original petition in the present suit on April 27, 2000. Thus, they filed their petition approximately four years and five months after the first property conveyance (the 165 acres to the Duran Family Trust); three years, nine and one-half months after the second conveyance (the one acre and home to Christie Patterson); and six months after the Hendersons claim to have first become aware of the conveyances.

As stated previously, the Hendersons' claim was extinguished if they did not

---

**3.** The Warranty Deed to this property describes three tracts of land. The first tract is purported to contain 14.94 acres, the second tract 14.731 acres, and the third tract 136 acres, for a total of 165.671 acres. The Hendersons refer to this property as a 165–acre tract; Charles Duran and Christie. Patterson refer to it as 160 acres; and Patresa Gilbert refers to it as 136 acres. For the sake of simplicity and because the difference between these three numbers is not dispositive,

we will describe it as approximately 165 acres.

**4.** Hereinafter when we refer to the 165 acres, we will not be referencing the one acre and the house, even though the latter is technically geographically included within the former. Rather, we will be referring to the entire 165 acres *except* for the acre and house, to which we will refer separately.

bring suit within four years from the time of the conveyances or, if later, within one year from the time at which they knew or could reasonably have known about the conveyances. The Hendersons' suit was clearly not brought within four years of the first conveyance, but it was brought within four years of the second conveyance. Therefore, the Hendersons' suit with respect to the second conveyance was timely. With regard to the first conveyance, both conveyances were filed in the deed records with the county clerk almost immediately after they were executed. Duran argues that we should impute constructive knowledge of the conveyances to the Hendersons from the time of the records filing. Under their analysis, because suit was not brought within four years nor within one year of the public filings from which they could and should reasonably have discovered the transfers, their claim was extinguished. Duran directs us to no authorities whatsoever in support of this argument.

■■■ The one year provision of Section 24.010 is similar to the discovery rule applicable to general fraud claims. Although we have already held that the extinguishment provision of TUFTA is different in effect than a traditional statute of limitations, we find it helpful to analogize to the discovery rule. The discovery rule provides that a claim for fraud does not accrue, and thus the limitation period does not begin to run, until the fraud is discovered, or in the exercise of reasonable diligence should have been discovered. *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (1943). Ordinarily, what constitutes reasonable diligence to discover fraud is a question of fact for the jury. *Id.* at 740. Unless the evidence is such that reasonable minds may not differ as to its effect, the question of whether a party has exercised diligence in discovering fraud is

for the fact finder. A creditor's cause of action to set aside a fraudulent conveyance accrues when the creditor acquires knowledge of the fraud, or would have acquired such knowledge in the exercise of ordinary care. *Eckert v. Wendel*, 120 Tex. 618, 623, 40 S.W.2d 796 (1931). And registration of a fraudulent conveyance at a certain date in public records is merely one circumstance bearing on the creditor's actual or presumed knowledge. *Id.*

We see no reason why the same principles should not apply in the context of Section 24.010. Whether the Hendersons filed their claim within one year of the time when they knew or reasonably could have known about the conveyances was a question of fact for the fact finder. Other than pointing out that E.G. Henderson admitted knowing in what county Charles Duran's parents had a home in which he occasionally lived, Duran presents no argument or authorities explaining why the Hendersons had a particular duty to investigate the real property records in that county. The facts show that the money Charles Duran owed to the Hendersons from the note was not in any way related to the real property that Duran conveyed, and the deeds were not in the Hendersons' chain of title. *See Cherry v. Farmers Royalty Holding Co.*, 138 Tex. 576, 160 S.W.2d 908 (1942); *Southwest Title Ins. Co. v. Woods*, 449 S.W.2d 773 (Tex.1970). *Cf. Murphy v. Campbell*, 964 S.W.2d 265 (Tex.1997); *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex.1981). In these circumstances, we find the public filings were but one consideration and do not of themselves raise a presumption of constructive knowledge. We find the evidence sufficient to conclude that the Hendersons neither knew nor could reasonably have known about the conveyances until such time as depositions were taken in the second suit against Duran and, therefore, in addition to the second conveyance, the trial court

properly had jurisdiction over the Hendersons' claim with respect to the first conveyance.

Duran's second major complaint is that there is no evidence or legally insufficient evidence to support the trial court's findings concerning Charles Duran's debt and his intent to hinder, delay, or defraud the Hendersons.

In considering a legal sufficiency or "no evidence" point, we consider only the evidence that tends to support the court's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L.REV. 361, 362–63 (1960). When we sustain a no-evidence point, we render judgment for the appellant. *Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176 (Tex.1986).

We will consider Charles Duran's debt to the Hendersons first. The trial court found the evidence legally and factually sufficient to establish a violation of Section 24.005(a)(1) of TUFTA. This statute, entitled "Transfers Fraudulent as to Present and Future Creditors" reads in relevant part:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

TEX. BUS. & COM.CODE ANN. § 24.005(a)(1) (Vernon Supp.2002).

Duran claims that the Hendersons failed to prove that Charles Duran was in fact indebted to them on the date of the first property conveyance, November 28, 1995, and that he did not become a debtor to the Hendersons, if at all, until the date on which the judgment in the second suit for conversion was rendered, January 19, 2000. We first note that the statute does not require that Charles Duran have been a debtor to the Hendersons on the date of the first property conveyance. It requires only that he have been such a debtor either before or within a reasonable time after the conveyance. However, because the trial court made an affirmative finding that Charles Duran received and converted the note proceeds before the first conveyance, we must inquire into whether this finding was supported by legally sufficient evidence.

A "debtor" is a person who is liable on a claim. TEX. BUS. & COM.CODE ANN. § 24.002(6). A "claim" means a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. TEX. BUS. & COM.CODE ANN. § 24.002(3). We recognize, as Duran correctly points out, that the first suit against Charles Duran did not make the Hendersons his creditors. It only awarded the Hendersons a one-half interest in the net proceeds of a note receivable that had not yet become mature. However, by virtue of that first suit, whereby the Hendersons were awarded the one-half interest in the note, as soon as Charles Duran was paid the full value of

the note he became liable to the Hendersons for their share. As the statutory definitions make clear, the Hendersons did not need to obtain a judgment against Charles Duran for conversion, which they in fact eventually did, in order for him to become a debtor to them within the meaning of the statute.

The note had a maturity date of December 29, 1996. The date of the first property conveyance was November 28, 1995. In its briefs, Duran does not dispute that the obligee on the note paid it before the maturity date. At trial, Charles Duran's daughter, Christie Jean Patterson, testified that she was aware at the time of trial that her father had received the note proceeds sometime in August of 1995. E.G. Henderson testified that "around Christmas" of 1996 he learned that the note had been paid in the summer of 1995. All of this testimony was without objection. Finally, the trial court took judicial notice of the judgment from the second suit wherein Charles Duran was held liable for conversion of the note proceeds. We find this evidence legally sufficient to establish that Charles Duran received the note proceeds in August of 1995, and thus that he was in debt to the Hendersons before and at the time of each property conveyance.

Duran also challenges the legal sufficiency of the evidence to support the trial court's findings that Charles Duran intended to hinder, delay, or defraud the Hendersons. This finding was a basis for the trial court's ruling that the conveyances were fraudulent and should be set aside. Because we find that the conveyances could not be in fraud of the Hendersons because they were of Charles Duran's homestead, this finding of intent becomes irrelevant and we need not discuss it further.

Duran's third complaint may be classed as three-fold: the property transferred in both conveyances was homestead property; the homestead claim to the 165 acres was not abandoned by Charles Duran's transfer of such property to the Family Trust; and homestead property is not subject to TUFTA.

■ Although amended in 1997, the Texas Constitution provided then as it does now that, with certain exceptions not applicable here, the homestead of a family or of a single adult person is protected from forced sale for the payment of most debts. *See* TEX. CONST. art. XVI, § 50 (amended 1997). A rural homestead may consist of not more than 200 acres for a family or 100 acres for a single adult. *See* TEX. PROP.CODE ANN. § 41.002(b) (Vernon 2000). The rural status and general homestead character of the land before the conveyances were made is not in dispute. However, the parties do dispute whether Charles Duran and the other occupants of his home were "a family" for homestead purposes, and thus whether Charles Duran could claim 100 or 200 acres as his homestead.

■ For over a century, within the context of homestead law, Texas courts have held that the family relation is one of status; that the head of the family must be legally or morally obligated to support at least one other family member; and additionally there must be a corresponding dependence on the other member for this support. *Roco v. Green*, 50 Tex. 483, 490 (1878); *NCNB Tex. Nat'l Bank v. Carpenter*, 849 S.W.2d 875, 879 (Tex.App.—Fort Worth 1993, no writ); *Henry S. Miller Co. v. Shoaf*, 434 S.W.2d 243, 244 (Tex.App.—Eastland 1968, writ ref'd n.r.e.). A family may include a parent and his or her adult child, provided that the parent is under an obligation to support the adult child and the child is dependent on the parent for support. *See, e.g., In re Hill*, 972 F.2d 116 (5th Cir.1992).

Before he made the conveyances, Charles Duran was unmarried and owned a home situated on approximately 165 acres. In 1994 his adult daughter, Christie Patterson, and his grandson, Christie Patterson's son, moved in with him. He received social security income of $800.00 per month, and Christie Patterson testified that the three of them depended on it for their support. There was also a cattle lease on the land that provided about $1,000.00 per month, but this money went to the trust, and the trust benefitted all of Charles Duran's children. In the summer of 1997, Christie Patterson became the legal guardian of her father's person and estate because he became incapacitated. At least from that time, Christie Patterson was unable to obtain any outside employment. Although it is unclear to what extent she provided for Charles Duran's care before he became incapacitated, he appears to have had at all times a moral obligation to provide for his daughter and grandchild, and he provided such support at least to the extent of the social security check. They were clearly not simply living together and sharing expenses, as the Hendersons implicitly argue. Given these facts and the liberality with which we are to construe the constitutional and statutory provisions that protect homestead exemptions, see *Whiteman v. Burkey*, 115 Tex. 400, 403, 282 S.W. 788 (1926), we find that a familial relationship has been adequately demonstrated.[5] Thus, because the land was rural and Charles Duran was the head of a family, he was entitled to claim the home and the surrounding 165 acres as his homestead before he made the conveyances.

■■■■■ The trial court concluded that Charles Duran effectively designated the one acre and home as his homestead, but that the homestead character of the surrounding 165 acres was lost when Charles Duran transferred it to the family trust. Duran challenges this conclusion. Once a homestead claimant has established the homestead character of the property, the burden shifts to the creditor to disprove the continued existence of the homestead. *See Sullivan v. Barnett*, 471 S.W.2d 39, 43 (Tex.1971); *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Once acquired, homestead rights are not easily lost. Property may lose its homestead character only by the claimant's death, abandonment, or alienation. *Garrard v. Henderson*, 209 S.W.2d 225, 229 (Tex. App.—Dallas 1948, no writ).

■■■■ We need not decide whether the conveyance to the family trust effectively waived Charles Duran's homestead claim to the property. This is because, even assuming for the purpose of argument that the conveyance was a complete alienation that resulted in Charles Duran losing his homestead claim to the property, the conveyance would still not result in the property being subject to the claims of Charles Duran's creditors. TUFTA applies to the transfer of "assets," the definition of which explicitly excludes property that is exempt under nonbankruptcy law. *See* Tex. Bus. & Com.Code Ann. § § 24.002(2); 24.002(12); 24.005. Furthermore, it is well settled

---

**5.** The record does not make clear whether Christie Patterson is married or not, only that she has a child. Whether or not she is married, the record makes clear by implication that she does not live with or receive support from any husband. Even if she were married, in these circumstances a family relation would still be established. *See, e.g., In re Hill*, 972 F.2d 116 (5th Cir.1992) (debtor, debtor's married daughter, and grandchild comprise a family under Texas homestead law where the married daughter is financially dependent on the father and does not live with or receive support from the husband).

that a conveyance of exempt property may not be attacked on the ground that it was made in fraud of creditors. *Chandler v. Welborn,* 156 Tex. 312, 294 S.W.2d 801 (1956); *Crow v. First Nat'l Bank of Whitney,* 64 S.W.2d 377, 379 (Tex.Civ.App.—Waco 1933, writ ref'd); *Dulaney v. Lawler,* 282 S.W. 321, 322 (Tex.Civ.App.—Texarkana 1926, no writ). The rationale for this rule is that because the law already has removed the homestead property from the reach of creditors, the conveyance of the property, whether fraudulent or not, does not deprive the creditors of any right they had against the property. *Wood v. Chambers,* 20 Tex. 247, 254 (1857); *Radney v. Clear Lake Forest Cmty. Ass'n, Inc.,* 681 S.W.2d 191, 197 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Matador Land & Cattle Co. v. Cooper,* 39 Tex.Civ.App. 99, 87 S.W. 235, 236 (1905, no writ). It follows that a debtor may sell exempt property or give it away and pass title as against his creditors. *See, e.g., Willis v. Mike,* 76 Tex. 82, 13 S.W. 58 (1890); *Johnson v. Echols,* 21 S.W.2d 382, 384 (Tex.Civ.App.—Eastland 1929, writ ref'd); *Russell v. Adams* 293 S.W. 264, 270 (Tex.Civ.App.—Dallas 1927), *aff'd,* 299 S.W. 889 (Tex. Comm'n App.1927, holding approved). Charles Duran had the power and the right to convey title to his homestead property to the Duran Family Trust free of any claim of his creditors.

 We note, however, that the general rule that a conveyance of exempt property may not be attacked on the ground it was made in fraud of creditors is not without limitation. If a deed to homestead property is not made with intent, as between the grantor and grantee, that the title should vest in the latter, but is made for the purpose of giving an apparent right only for the purpose of protecting it against the claims of the original owner's creditors after he should cease to use it for

the purpose that gave the exemption, it would be subject to seizure and sale to pay his debts when the exemption ceased. *Taylor v. Ferguson,* 87 Tex. 1, 26 S.W. 46, 48 (1894). This limitation applies only where the original owner actually ceases to use the land for homestead purposes. *See Beard v. Blum,* 64 Tex. 59, 62 (1885); *Hughes v. Parmer,* 164 S.W.2d 576, 577 (Tex.Civ.App.—Austin 1942, no writ). This limitation to the general rule obviously prevents a party from circumventing the requirement that a homestead actually be used for the purposes that give rise to the exemption.

In our case, there is no evidence that the conveyance was a sham transaction to allow Charles Duran to retain rights in the property while ending its homestead use. The only evidence relied on by the Hendersons to show that the homestead character of the property was lost is the mere fact of the conveyance. This is insufficient to show the applicability of the limitation just explained. Therefore, the general rule that a conveyance of exempt property may not be attacked on the ground that it was made in fraud of creditors applies in this case.

The constitutional protections afforded homestead rights as well as the explicit provisions of TUFTA make it clear that the conveyance of a homestead may not be set aside as in fraud of creditors. The trial court erred in finding that Charles Duran waived his homestead claim in the 165 acres by conveying the land to the Family Trust. Thus, it was error to set the conveyance aside and subject it to the Hendersons' claim. The trial court also set aside Charles Duran's conveyance of the home and surrounding one acre. The court did so despite the fact that it concluded that Charles Duran had effectively reserved this property as his homestead. This was also error. Consequently, we

reverse that portion of the judgment that ordered the two conveyances set aside and the 165 acres sold to satisfy the Hendersons' claim, and we render judgment that the Hendersons take nothing on those claims. As Duran does not challenge the seizure of the monies, that portion of the judgment is affirmed.