# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00271-CV

**Cadle Company and Cadleway Properties, Inc., Appellants**

**v.**

**William T. Wilson and David Greenfield, Appellees**

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
### NO. 194,369-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## O P I N I O N

Cadle Company and Cadleway Properties, Inc. (collectively, Cadle) appeal from summary judgment in favor of William T. Wilson and David Greenfield. Cadle alleged that Wilson and Greenfield perpetrated a fraudulent transaction to protect Wilson's property from Cadle's collection efforts pursuant to a judgment it held against Wilson. Cadle argues that summary judgment was improper. For the reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

Cadle recovered a $90,000 judgment against Wilson in January 1996.[1] In April 1997, Cadle took a post-judgment deposition of Wilson, who disclosed that approximately one year earlier,

---

[1] The debt in that dispute derived from the foreclosure of a building owned by a now terminated partnership Wilson had formed with another attorney, who is not a party to this suit. Cadle had purchased the obligation from the bank that originally held the lien on the building. Cadle's principal business is the purchase of outstanding debts for collection.

Greenfield had purchased from First State Bank of Keene a promissory note on which Wilson was obligated.[2] As collateral for that note, Wilson had pledged to Greenfield his membership interest in William T. Wilson, Attorney & Counselor at Law, Ltd., a limited liability corporation formed by Wilson for the conduct of his legal practice.[3] Wilson explained to Cadle at the deposition that Greenfield was not in the business of buying bank notes, but was rather an acquaintance of Wilson's who had purchased the bank note as a favor so that Wilson could negotiate more favorable terms on which to pay the debt.[4]

Cadle apparently took no further action to collect the judgment from Wilson until February 2002, when it deposed Wilson for a second time. In this deposition, Wilson disclosed that he was not current on payments to Greenfield, had not been so for several years, and that Greenfield had made no effort to collect on the loan. Cadle then applied to the district court in April 2002 for turnover relief under the original 1996 judgment against Wilson, arguing that the note pledged to Greenfield was a sham and that the membership interest should therefore be turned over to Cadle. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b)(1) (West 1997). Wilson denied the allegation and urged that because Greenfield's rights were being adjudicated as well, it would be improper to

---

[2] Wilson had consolidated five separate notes into a single promissory note in the amount of $97,539.36, payable to First State Bank of Keene.

[3] Wilson holds a 99% ownership interest in the limited liability corporation. The remaining 1% is owned by his daughter. Hereafter, Wilson's interest will be referred to as the "membership interest."

[4] Greenfield agreed to purchase the note for $40,000, to be repaid by Wilson in three years. During those three years, Wilson would owe only the interest.

2

proceed without Greenfield as a party. After a hearing on the matter, the trial court denied turnover relief in June 2002.

Cadle initiated another suit in September 2002, naming both Wilson and Greenfield as defendants. This new suit sought first to set aside the transfer of the membership interest as fraudulent. *See* Tex. Bus. & Com. Code Ann. § 24.008 (West 2002). It also sought a declaratory judgment that the transaction between Greenfield and Wilson was void, plus attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). Finally, this new proceeding again requested that the membership interest be turned over to Cadle because of the allegedly fraudulent nature of Wilson's and Greenfield's arrangement. *See id*. § 31.002(b)(1).

After a hearing on evidentiary motions, the trial court granted summary judgment in favor of Wilson and Greenfield. The court gave no specific grounds for its decision. Cadle argues on appeal that summary judgment was improper because Wilson and Greenfield should have been estopped from making certain res judicata arguments, and because there is a genuine issue of material fact about when the statute of limitations should run on its various claims. Additionally, Cadle contends that the trial court erred in sustaining certain evidentiary objections raised by Wilson and Greenfield.

## DISCUSSION

### *Standard of review*

The standard for reviewing a summary judgment is whether the moving party carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001); *see also* Tex. R. Civ. P.

3

166a(c). Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Castellow v. Swiftex Mfg. Corp.*, 33 S.W.3d 890, 894 (Tex. App.—Austin 2000, no pet.) (citing *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994)). In reviewing a trial court's summary judgment, we resolve all doubts against the movant, and we view the evidence in the light most favorable to the nonmovants. *Shah*, 67 S.W.3d at 842. When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary-judgment grounds are meritorious. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999).

### *Statutory fraudulent transfer and the "discovery rule"*

The Texas Uniform Fraudulent Transfer Act (TUFTA) imposes a four-year statute of limitations for filing a claim. *See* Tex. Bus. & Com. Code Ann. § 24.010(a)(1) (West 2002). It is undisputed that the Wilson-Greenfield transaction occurred sometime in 1996 and that Cadle's claim was not filed until September 2002, falling outside of TUFTA's four-year statute of limitations. Nonetheless, Cadle argues that its claim is not barred because TUFTA explicitly allows for the discovery-rule exception to the statute of limitations:

> (a)  [A] cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
>
> (1)  under Section 24.005 (a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, *within one year after the transfer or obligation was or could reasonably have been discovered* by the claimant.

4

*Id.* (emphasis added). Cadle's argument is that although it discovered the transfer in 1997, the statute's discovery-rule exception defers accrual of its cause of action until Cadle discovered the fraudulent nature of the transaction, which was not until the second Wilson deposition in 2002. If the statute refers to discovery of the transfer itself, not its fraudulent nature, Cadle's claim is barred because it brought suit more than one year after it first learned of the transaction in 1997; if Cadle is correct, then the claim was brought within the statutory discovery-rule exception and is not barred.

We initially note that section 24.010 is not simply a limitations provision, but is specifically titled "*Extinguishment* of Cause of Action." *See id.* § 24.010 (emphasis added). Such language indicates that the limitations provision of TUFTA is intended to be strictly construed and that section 24.010 is technically a statute of repose, rather than a statute of limitations. *See id.* A statute of limitations is a procedural device operating as a defense to limit the remedy available from an existing cause of action; a statute of repose creates a substantive right to be free from liability after a legislatively determined period. *Duran v. Henderson*, 71 S.W.3d 833, 837 (Tex. App.—Texarkana 2002, pet. denied). While statutes of limitations operate to bar enforcement of a right, a statute of repose takes away the right altogether. *Id*. at 838. The provision in section 24.010 "bars the right and not merely the remedy." *See* Uniform Fraudulent Transfer Act § 9, 7A-2 U.L.A. 266, 359 cmt. (1999).

It is clear from the text of the statute that the legislature has chosen to preserve application of the discovery rule to some extent within the provisions of TUFTA. The statute under which Cadle sued defines a fraudulent transfer as one made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (West 2002).

5

Thus, the element making a transfer "fraudulent" is the state of mind of the transferor. *See id.* The discovery rule preserved in section 24.010(a)(1) defers the accrual of a plaintiff's cause of action until its discovery of the "transfer," which clearly refers to the "fraudulent transfer" in subsection (a). *See id.* § 24.010(a)(1). But, we disagree with Cadle that its one-year limitations period did not begin to run until it suspected that the transfer was fraudulent in 2002.

The discovery rule defers the accrual of a cause of action until the plaintiff knew or, through the exercise of reasonable diligence, should have known of the facts giving rise to the cause of action. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455-56 (Tex. 1994). The supreme court has limited the application of the discovery rule to circumstances in which the nature of the injury is inherently undiscoverable and the evidence of the injury is objectively verifiable. *See Altai*, 918 S.W.2d at 455-56. These two elements—inherent undiscoverability and objective verifiability—balance the following conflicting policies in statutes of limitations: the benefits of precluding stale claims versus the risks of precluding meritorious claims that happen to fall outside of an arbitrarily set period. *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

Although we note that the supreme court's discovery-rule analysis has focused on whether the discovery rule is available under the common law—whereas here, the discovery rule is explicitly available by statute—the court's "inherently undiscoverable" analysis, which focuses on a plaintiff's exercise of reasonable diligence, is relevant to the statutory issue here of when this transfer *could reasonably have been* discovered. *See* Tex. Bus. & Com. Code Ann. § 24.010(a)(1).

An injury is inherently undiscoverable if it is by nature the type of injury that is unlikely to be discovered within the prescribed limitations period despite due diligence. *Altai*, 918 S.W.2d at 456; *S.V.*, 933 S.W.2d at 7. The question is not whether the particular plaintiff was able to discover the injury at issue in the particular case within the statutory period, but whether the injury is the type of injury that by its very nature falls into the category of being inherently undiscoverable. *Horwood*, 58 S.W.3d at 734-35 (Tex. 2001). In other words, would a plaintiff exercising reasonable diligence discover the injury within the limitations period? *See id.* at 735.

The supreme court has narrowed application of the discovery rule to a class of cases in which the injury was so concealed as to be effectively undetectable by the claimant without some type of expertise, or at least until the harm was already done. *See Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1988) (attorney-malpractice actions subject to discovery rule because of fiduciary relationship between attorney and client and client's lack of actual or constructive knowledge of injury); *Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976) (action for false and libelous credit report not ordinarily knowable until claimant refused credit); *Hays v. Hall*, 488 S.W.2d 412, 414 (Tex. 1972) (defective vasectomy operation undiscoverable until patient's wife becomes pregnant or his fertility is shown by further testing); *Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex. 1967) (negligent leaving of foreign object in patient's body by physician during surgery). In *Altai*, the supreme court determined that a software company should reasonably be expected to know that trade secrets are a valuable commodity within that highly competitive field and, through the exercise of reasonable diligence, should be able to discover most misappropriations of its intellectual property within the two-year statute of limitations. *Altai*, 918 S.W.2d at 456-57.

In *HECI,* the supreme court applied similar reasoning to application of the discovery rule in the context of oil and gas law. *See HECI*, 982 S.W.2d at 886-88. In that case, owners of a royalty interest in a mineral estate attempted to bring a claim against their lessee for failure to notify them of a potential cause of action they had against a third party. The lessee had previously recovered a judgment against the third party for overdrilling from a common reservoir shared by both the lessee and the third party, in violation of rules promulgated by the Texas Railroad Commission. *Id.* at 884. The royalty owners did not become aware of the judgment, and thus their own potential cause of action against the third party, until after the statute of limitations had run. *Id.* at 885. In declining to apply the discovery rule to the plaintiffs' claim, the court found this to be a type of injury that is generally discoverable by the exercise of reasonable diligence. *Id.* at 886. Thus, the court found that in the context of an oil and gas lease, "reasonable diligence" by royalty owners to protect their interests includes the affirmative duty to determine potential damage caused by adjoining operators on a common reservoir. *Id*. The court held that the existence of public records at the railroad commission concerning the prior suit may not constitute constructive notice, but it is sufficient to void a claim that such an injury is inherently undiscoverable. *Id.* at 887. *HECI* makes clear that any claim of the application of the discovery rule will be subject to a probing analysis on a categorical basis of whether the injury alleged could reasonably be discovered by a potential claimant's diligent efforts. *See id.* at 886; *see also Horwood*, 58 S.W.3d at 736-37 (extending reasoning of *HECI* to claims based on underpayment of royalties).

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to establish that defense conclusively. *KPMG Peat Marwick v. Harrison County*

*Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *Id.* If the movant establishes that the statute of limitations bars the action, the non-movant must then adduce summary-judgment proof raising a fact issue in avoidance of limitations. *Id.*

When a plaintiff knew or should have known of an injury is generally a question of fact. *National W. Life Ins. Co. v. Rowe*, 86 S.W.3d 285, 298 (Tex. App.—Austin 2002, pet. filed); *Houston Endowment, Inc. v. Atlantic Richfield Co.*, 972 S.W.2d 156, 160 (Tex. App.—Houston [14th Dist.] 1998, no pet.). However, if reasonable minds could not differ about the conclusion to be drawn from the facts in the record, then the start of the limitations period may be determined as a matter of law. *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998); *see Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 639-40 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Cadle's primary business is the purchase of outstanding bank notes for collection. The only reason it deposed Wilson in April 1997 was to investigate his financial situation and determine if it could collect on the judgment it held against him. At this deposition, Cadle not only discovered the transfer between Wilson and Greenfield, but also learned that Greenfield was not in the business of buying bank notes; rather, Wilson asked his friend Greenfield to purchase the note for the express purpose of negotiating more favorable payment terms. We conclude that a reasonably diligent debt-collection business would have investigated such transfer to protect its rights. Such

9

conclusion is consistent with supreme-court precedent considering the "inherently undiscoverable" requirement. *See Altai*, 918 S.W.2d at 456-57 (software company is expected to investigate potential misappropriations of trade secrets because nature of business merits that level of diligence). We conclude that to exercise due diligence a debt-collection business should investigate the nature of the transaction once it learns of a transfer and that Cadle did not do so here.

With the evidence presented, we conclude that reasonable minds could not differ about the conclusion to be drawn from the facts in the record: Cadle knew about the Wilson-Greenfield transfer in April 1997, yet it did nothing until Wilson's second deposition in February 2002 to determine whether the transaction threatened its rights as a judgment-creditor. *See Bankruptcy Estate of Harrison v. Bell*, 99 S.W.3d 163, 168 (Tex. App.—Corpus Christi 2002, no pet.) (improper referral of attorney's client to another firm was injury reasonably diligent attorney would discover within statute of limitations, and summary judgment in favor of defendant was proper); *Wheeler*, 95 S.W.3d at 639-40 (summary judgment was proper on defamation claim when physician knew about existence of adverse-action report made by former employer to national data bank but made no attempts to determine report's contents for over a year). Reasonable minds could not differ in concluding that Cadle should have discovered the fraudulent nature of the transfer within a year after it first learned of its existence. Under these facts, the discovery-rule exception in section 24.010(a)(1) required Cadle to bring suit within a year after Cadle first learned of the Wilson-Greenfield transaction, not within a year after the allegedly fraudulent details were actually discovered. Cadle's claim for fraudulent transfer is barred. We overrule Cadle's fourth issue.

10

*Common-law fraudulent transfer and the "discovery rule"*

Cadle further argues that, apart from its statutory claim, it may also bring a common-law claim for fraudulent transfer. *See Hoerster v. Wilke*, 158 S.W.2d 288, 289-90 (Tex. 1942). To allow common-law claims for fraudulent transfer, however, would frustrate the express purpose of the legislature in enacting TUFTA. Section 24.012 states clearly that the purpose of the statute is "to make uniform the law with respect to the subject of this chapter among states enacting it." *See* Tex. Bus. & Com. Code Ann. § 24.012 (West 2002). The section further notes that TUFTA applies to transfers made and obligations incurred by debtors after September 1, 1987, the effective date of the statute. *See id.* Moreover, the statute makes explicit that any transfers or obligations made before that date "are governed by the law in effect immediately before this Act took effect, *and that law is continued in effect for that purpose.*" *See* Tex. Bus. & Com. Code Ann. § 24.012 historical note [Act of Sep. 1, 1987, 70th Leg., R.S., ch. 1004, § 2, 1987 Tex. Gen. Laws 3388, 3394] (emphasis added).

The allegedly fraudulent transfer here occurred well after the effective date of TUFTA. Thus, Cadle has no right to bring a common-law claim.[5] Summary judgment against Cadle's fraudulent-transfer claims was proper.

*Turnover and res judicata*

Cadle argues that the membership interest pledged to Greenfield should be turned over to Cadle pursuant to its judgment against Wilson. *See* Tex. Civ. Prac. & Rem. Code Ann.

---

[5] Moreover, even if a common-law claim for fraudulent transfer survives the adoption of TUFTA, case law dictates that for application of the discovery rule, the injury must be "inherently undiscoverable," which Cadle's injury was not.

11

§ 31.002(b)(1).[6] Cadle does not, however, cite any grounds for turnover relief apart from the allegation that the transaction between Wilson and Greenfield was a sham. Wilson and Greenfield argue that Cadle's turnover request is barred by the doctrine of res judicata.

Res judicata consists of two concepts. Claim preclusion prevents the litigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in a prior suit. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). Issue preclusion, also known as collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit. *Id.*

Cadle's original claim for turnover relief was denied by the district court in June 2002. In its petition for that claim, the only ground Cadle cited to justify turnover was the alleged

---

[6] The text of the turnover statute reads:

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

   (1) cannot readily be attached or levied on by ordinary legal process; and

   (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

   (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, [or]

   (2) otherwise apply the property to the satisfaction of the judgment[.]

Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b)(1) (West 1997).

12

sham transaction between Wilson and Greenfield. Cadle's current turnover claim is indistinguishable from its prior turnover claim. Because the prior turnover claim was denied by the district court, to entertain the current claim would be to litigate a cause of action that has been finally adjudicated. We hold that Cadle's current turnover claim is barred by res judicata.[7]

*Fraudulent concealment*

Cadle also attempts to rely on the doctrine of fraudulent concealment to toll the statute of limitations on its various claims generally. Cadle argues that, even if it failed to bring a claim within the statute of limitations, it was only because Wilson and Greenfield fraudulently concealed their actions. Therefore, the discovery rule should preserve its claim.

The equitable doctrine of fraudulent concealment, when properly invoked, estops a defendant from relying on limitations as an affirmative defense. *Patrick v. Howard*, 904 S.W.2d 941, 945 (Tex. App.—Austin 1995, no writ). The doctrine is limited, however, to those situations in which the defendant has a duty of disclosure. *Id*. The existence of a duty of disclosure is a question of law for the court. *Id*. Cases where the doctrine is applied are rare, such as those involving doctor-patient, attorney-client, or fiduciary relationships. *Id*. No such duty or relationship has been asserted by either party here. Accordingly, we hold as a matter of law that neither Wilson

---

[7] Cadle asserts that its turnover action is not barred by res judicata because Greenfield is now a party, whereas before he was not. Greenfield's inclusion in this action is immaterial, however, because a turnover action cannot be issued against a third party who merely possesses property belonging to the judgment debtor. *See Parks v. Parker*, 957 S.W.2d 666, 668-69 (Tex. App.—Austin 1997, no pet.). Thus, this turnover action repeats the earlier action against the same defendant and is therefore barred. Accordingly, we do not reach Cadle's privity argument. *See, e.g.*, *Getty Oil Co. v. Insurance Co. of N. Am.*, 845 S.W.2d 794, 800-01 (Tex. 1992) (defining parties in privity as including, but not limited to, persons who exert control over action, whose interests are represented by party to first suit, or who are successors in interest to first party).

13

nor Greenfield had any duty of disclosure to Cadle, and therefore the doctrine of fraudulent concealment does not apply.

### *Ten-year statute of limitations*

Cadle additionally asserts that its claim for turnover relief is governed by the ten-year statute of limitations for executing a writ to collect a judgment. See Tex. Civ. Prac. & Rem. Code Ann. § 34.001 (West 1997) (judgment becomes dormant if writ of execution not issued within ten years). The issue is not whether Cadle is barred from recovering on its judgment against Wilson, but whether Cadle is barred from bringing a claim for fraudulent transfer to effect that purpose. Cadle is free to pursue collection of its judgment under any other valid theory within the standard ten-year limitations period for collection on judgments. Cadle cannot, however, "adopt" that ten-year statute of limitations into its fraudulent-transfer claim simply by asserting that it is part of its general pursuit of a judgment. We overrule Cadle's third issue.

### *Other issues*

Because summary judgment was proper on limitations grounds, we do not reach Cadle's first and second issues concerning merger, bar, and estoppel, or Cadle's fifth issue regarding the trial court's evidentiary rulings.

### CONCLUSION

Cadle's claim for fraudulent transfer against Wilson and Greenfield is barred by the statute of limitations, and summary judgment was thus proper on that ground. Furthermore, Cadle's

14

turnover action seeking Wilson's membership interest is barred by res judicata.  We affirm the judgment of the trial court in all respects.


_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:  May 13, 2004