6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00051-CV
______________________________



IN RE: ALLSTATE INSURANCE COMPANY





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Original Mandamus Proceeding





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Connie Young sued Allstate Insurance Company on the underinsured motorist (UIM)
coverage Allstate issued to Young, alleging Allstate (a) owed her on the UIM coverage, (b)Â breached
her insurance contract, (c) violated Texas Insurance Code Article 21.21, (d) violated the Texas
Deceptive Trade Practices Act, and (e) handled her claim in bad faith. The trial court overruled
Allstate's motion for severance of the coverage claim from the others and abatement of the
othersâitems (b), (c), (d), and (e)âinstead ordering the trial bifurcated, so the coverage claim
would be tried first, then the others, if Young succeeded on her coverage claim. Allstate petitions
this Court for a writ of mandamus to require the trial court to grant Allstate's motion to sever and
abate. We decline.
Â Â Â Â Â Â Â Â Â Â Â Â Allstate argues that, because they tendered an offer of settlement to Young, severance is
mandated by Texas caselaw. Allstate contends that, if the matters are not severed, Young will be
able to present the jury with evidence of Allstate's proffer of settlement, unfairly prejudicing Allstate.
Â Â Â Â Â Â Â Â Â Â Â Â Trial courts have broad discretion in deciding whether to sever claims into separate cases. 
Guar. Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 658 (Tex. 1990) (op. on reh'g.);
In Â re Â Koehn, Â 86 Â S.W.3d Â 363, Â 366 Â (Tex. Â App.âTexarkana Â 2002, Â orig. Â proceeding). Â Tex. Â R.
Civ. P. 41 grants the trial court "broad discretion in the matter of consolidation and severance of
causes." McGuire v. Commercial Union Ins. Co., 431 S.W.2d 347, 351 (Tex. 1968). Severance is
proper when (1) the controversy involves more than one cause of action, (2) the severed claim is one
that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is
not so interwoven with the remaining action that it involves the same facts and issues. Id. The
controlling reasons for a severance are to do justice, to avoid prejudice, and to further convenience. 
Tex. R. Civ. P. 174(b); Guar. Fed. Sav. Bank, 793 S.W.2d at 658.
Â Â Â Â Â Â Â Â Â Â Â Â Mandamus will lie only to correct a clear abuse of discretion. Walker v. Packer, 827 S.W.2d
833, 840 (Tex. 1992) (orig. proceeding). Further, there must be no adequate remedy at law. Id. An
appellate court will not interfere with a trial court's exercise of discretion except in rare
circumstances. For mandamus relief to be appropriate, the trial court must have clearly abused its
discretion, issuing a decision without basis or guiding principle in law. Cf. Johnson v. Fourth Court
of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). The relator, seeking mandamus,
must establish that the trial court could reasonably have reached only one decision. Walker, 827
S.W.2d at 839â40.
We will reverse a trial court's determination regarding severance only if we find an
abuse of discretion. Nevertheless, when all the facts and circumstances of the case
unquestionably require a severance to prevent manifest injustice, there is no fact or
circumstance supporting or tending to support a contrary conclusion, and the legal
rights of the parties will not be prejudiced, there is no room for the exercise of
discretion. In that situation, the trial court has a duty to order a severance.
Koene, 86 S.W.3d at 366 (citations omitted). "[C]lear failure by the trial court to analyze or apply
the law correctly will constitute an abuse of discretion, and may result in appellate reversal by
extraordinary writ." Walker, 827 S.W.2d at 840.
Â Â Â Â Â Â Â Â Â Â Â Â Allstate argues that Liberty Nat. Fire Ins. Co. v. Akin, 927 S.W.2d 627 (Tex. 1996), requires
severance of Young's claims, and therefore the trial court abused its discretion in denying Allstate's
motion. In Akin, the insurer tendered payment on the part of the insured's claims which were not in
dispute. The insurance company then moved the trial court to sever the insured's coverage claim
from the bad faith claim. Id. at 628.
Â Â Â Â Â Â Â Â Â Â Â Â Akin does not require severance in each case in which a settlement offer is tendered. In fact,
Akin denies severance. Writing for the majority, Justice Cornyn acknowledged that there may be bad
faith cases in which severance is required, such as cases in which the insurer has made a settlement
offer on a disputed contract claim. It is true, as Allstate points out, that the court agreed with certain
intermediate appellate courts ordering severance. We conclude, however, that neither those cases,
nor Akin, mandate severance in this case.
Â Â Â Â Â Â Â Â Â Â Â Â Allstate directs us to State Farm Mut. Auto. Ins. Co. v. Wilborn, 835 S.W.2d 260 (Tex.
App.âHouston [14th Dist.] 1992, orig. proceeding). In Wilborn, the insured sued, alleging State
Farm denied coverage under the policy and acted in bad faith. See id. at 260â61. In that case, there
was specific evidence before the trial court about the amount of the settlement offer; and the
plaintiff-insured testified regarding why she alleged the insurer was in bad faith. Id. The record in
the case before us lacks such evidence.
Â Â Â Â Â Â Â Â Â Â Â Â Allstate also directs us to United States Fire Ins. v. Mallard, 847 S.W.2d 668 (Tex.
App.âHouston [1st Dist.] 1993, orig. proceeding). In Mallard, the insurance company had made
several offers of settlement, before and after suit was filed. The court followed Wilborn's reasoning
in finding the particular facts before the trial court left no legal option but severance. Id. at 673. The
Mallard court, however, had those particular facts in its record.
Â Â Â Â Â Â Â Â Â Â Â Â After reviewing the cases cited by Allstate and the record before us, we find the trial court
acted within its discretion. Allstate has not provided this Court with evidence of what settlement
offer was tendered, if any. Instead, Allstate directs us to a section of its motion to sever. The only
factual allegation therein is as follows: "Plaintiff will undoubtedly offer evidence of the settlement
demands, post-litigation settlement offers, if any, reserves and evaluations as proof of Allstate's
alleged bad faith." Allstate simply provides no evidence to this Court of what specific settlement
offers, if any, were actually tendered, nor their nature, nor whether the plaintiff rejected them.


 The
conclusory allegations in Allstate's petition for mandamus relief and pleadings below do not
demonstrate that the trial court acted contrary to the only rational decision that court could have
made. Cf. Walker, 827 S.W.2d at 839â40. As the Akin court noted, "evidence of this sort [in the
cases cited by the insurance company] simply does not exist in this case. In the absence of a
settlement offer on the entire contract claim, or other compelling circumstances, severance is not
required." Akin, 927 S.W.2d at 630.


 Akin's reasoning addresses concerns that the insurer not be
prejudiced by admission of evidence of settlement offers, unless and until such evidence would
become relevant and admissible, i.e., on a finding of coverage under the insurance policy and a
subsequent trial on the other claims. Here, bifurcating the issues into two trials allows for the
necessary protections for each party within the trial court's discretion.



Â Â Â Â Â Â Â Â Â Â Â Â Finding no abuse of discretion in the trial court's ruling, we deny Allstate's petition for writ
of mandamus.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â May 11, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â May 12, 2005




.MsoFootnoteTextCxSpMiddle, div.MsoFootnoteTextCxSpMiddle
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpLast, li.MsoFootnoteTextCxSpLast, div.MsoFootnoteTextCxSpLast
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
a:link, span.MsoHyperlink
 {mso-style-priority:99;
 color:blue;
 mso-themecolor:hyperlink;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-004-CV%20Driver%20v.%20Conley%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00004-CV

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  GIANNA DRIVER,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  JAMES G. CONLEY, SR., Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 71st Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Harrison County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. 01-0416

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Chief Justice Morriss








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  James G.
Conley, Sr., has previously been convicted of, and is serving time for, sexual
assaults against Gianna Driver.[1]Â  For those torts, Driver obtained a civil
money judgment against Conley.Â  As part
of DriverÂs efforts to collect that judgment, she appeals from the denial of
her request for a turnover order[2]
on a house and lot that Conley claims as his homestead.Â  Driver argues that Âsomeone who intentionally
commits criminal acts of sexual assault within a home against a minor child may
[not] be entitled to claim continuing homestead exemptionÂ since Âimprisonment
in a new residenceÂ should be deemed abandonment of homestead.Â  Because we hold that ConleyÂs imprisonment
for his crimes does not constitute abandonment of his homestead, we affirm the
trial courtÂs denial of DriverÂs request for a turnover order concerning the
house and lot in question.[3]

Â Â Â Â Â Â Â Â Â Â Â  ÂHomestead
rights have historically enjoyed great protection in our jurisprudence.ÂÂ  Florey
v. Estate of McConnell, 212 S.W.3d 439, 443 (Tex. App.ÂAustin 2006, pet.
denied) (prisoner who murdered his wife was entitled to claim homestead
exemption).Â  Our Texas Constitution
provides that Â[t]he homestead of . . . a single adult person, shall be, and is
hereby protected from forced sale, for the payment of all debtsÂ not
specifically enumerated within.Â  Tex. Const. art. XVI, Â§ 50.Â Â  Homestead rights are liberally construed to
prevent citizens from losing their homes.Â 
Florey, 212 S.W.3d at
443.Â  The party seeking a turnover order
must prove that the property is not exempt.Â 
Hanif v. Clarksville Oil & Gas
Co., No. 06-09-00110-CV, 2010 WLÂ 2105936, at *3 (Tex. App.ÂTexarkana
May 27, 2010, no pet.) (mem. op.); see
Tex. Civ. Prac. & Rem. Code Ann.
Â§ 31.002(a)(2), (b)(1) (Vernon 2008); Tanner
v. McCarthy, 274 S.W.3d 311, 322 (Tex. App.ÂHouston [1st Dist.] 2008, no
pet.).

Â Â Â Â Â Â Â Â Â Â Â  We review
the granting or denial of a turnover order for an abuse of discretion. Â Beaumont
Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Tanner, 274 S.W.3d at 320. Â A
trial court abuses its discretion if it acts in an unreasonable or arbitrary
manner. Â Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238 (Tex. 1985). Â A trial
courtÂs issuance of a turnover order, even if predicated on an erroneous conclusion
of law, will not be reversed for an abuse of discretion if the judgment is
sustainable for any reason. Â Buller, 806 S.W.2d at 226. Â A trial court does not abuse its discretion if
there is some evidence of a substantive and probative character to support the
decision. Â Tanner, 274 S.W.3d at 321Â22.Â 
DriverÂs points of error question whether there was Âsome evidenceÂ
supporting the trial courtÂs conclusion that Conley did not Âabandon his
homestead Property.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  All parties
agree that the property in question was the homestead of Conley at some
point.Â  ÂOnce acquired, homestead rights
are not easily lost.Â  Property may lose
its homestead character only by the claimantÂs death, abandonment, or
alienation.ÂÂ  Duran v. Henderson, 71 S.W.3d 833, 842 (Tex. App.ÂTexarkana 2002,
pet. denied). Â Driver argues that ConleyÂs
incarceration constituted an abandonment of his homestead.Â  ÂAbandonment of a homestead requires both the
cessation or discontinuance of use of the property as a homestead, coupled with
the intent to permanently abandon the homestead.ÂÂ  Womack
v. Redden, 846 S.W.2d 5, 7 (Tex. App.ÂTexarkana 1992, writ denied). Â Evidence relied on as establishing Âabandonment
of a homestead must make it undeniably clear that there has been a total
abandonment with an intention not to return and claim the exemption.Â Â Id.

Â Â Â Â Â Â Â Â Â Â Â  DriverÂs
first argument is that ConleyÂs homestead was abandoned due to his long-term
imprisonment.Â  Driver had the burden of
proving abandonment with legally and factually sufficient evidence.Â  Florey,
212 S.W.3d at 446.Â  Conley was married
and divorced several times.Â  The home was
purchased as his separate property in 1985.Â 
He testified, ÂIÂve lived there ever since.Â  I have supported it fully.Â  I have not abandoned it or anything of that
type . . . .Â  I have never left my home
with the intention of not going back.ÂÂ 
Records from the appraisal district list the property as ConleyÂs
homestead.Â  On advice of counsel, Conley
filed for bankruptcy after the civil judgment in DriverÂs favor.Â  He declared the property as his homestead in
that bankruptcy.Â  ConleyÂs responses to
discovery establish that his books and records are still kept at his home and
that his daughter lived in the home from time to time.[4]Â  Conley testified he planned on living in the
home on his release from incarceration.

Â Â Â Â Â Â Â Â Â Â Â  Abandonment
of a homestead must be voluntary.Â  Id. at 444 (citing King v. Harter, 70 Tex. 579, 8 S.W. 308, 309 (1888)).Â  ÂAn act of necessity is not a voluntary
abandonment of the homestead.ÂÂ  R.B. Spencer Co. v. Green, 203 S.W.2d
957, 959 (Tex. Civ. App.ÂEl Paso 1947, no writ).Â  While Conley voluntarily committed the crime,
he did not voluntarily change his residence.Â 
A homestead is not abandoned merely because a person does not occupy the
home during a prison sentence.Â  Florey, 212 S.W.3d at 447.Â  We conclude that there was some evidence to
support the trial courtÂs finding that ConleyÂs homestead was not abandoned.

Â Â Â Â Â Â Â Â Â Â Â  Driver did
not attempt to contest ConleyÂs claims that he considered the home as homestead
and planned to return to it when released from incarceration.Â  Instead, Driver complained that Âimmediate
transfer of [nonexempt] propertyÂ to pay legal fees was conducted in bad faith
with the design of keeping Driver from collecting on her judgment.Â  We are unsure of how transfer of nonexempt
property to pay legal fees could affect ConleyÂs homestead status.Â  The trial courtÂs finding of fact was that
nonexempt property was transferred to pay legal fees and was not conducted in
bad faith.Â  We will not disturb this
finding, which has no bearing on the issue of abandonment of homestead.[5]

Â Â Â Â Â Â Â Â Â Â Â  Driver next
argued that the filing of a Âsham bankruptcyÂ recommended to Conley by counsel,
coupled with his assertion that he may have been married according to common law,
suggested that Conley Âshould be stopped from making such an exemption claim.Â[6]Â  The trial court found, based on ConleyÂs
uncontested testimony, that bankruptcy was filed on advice of counsel and that
Conley was unsure of the status of his relationship with Moncoda.Â  Again, DriverÂs contentions and the evidence
presented to support them did not establish that Conley abandoned his homestead
and voluntarily left without intention to return.

Â Â Â Â Â Â Â Â Â Â Â  Because
there was some evidence supporting the trial courtÂs denial of DriverÂs motion
for turnover, we overrule DriverÂs remaining points of error.

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  We affirm the trial courtÂs
judgment.

Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Josh
R. Morriss, III

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  July
27, 2010

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  August
11, 2010











[1]Conley
was convicted of two counts of aggravated sexual assault, three counts of
sexual assault, and four counts of indecency with a child.Â  He was sentenced to thirty-five yearsÂ
incarceration on both counts of aggravated sexual assault and twenty yearsÂ
incarceration on all remaining counts, all to be served concurrently. 

Â 





[2]To
try to collect on the judgment, Driver filed with the trial court a motion for
turnover order asking the court to order Conley to turn over his home and lot along
with other unimproved lots, all in Harrison County.Â  While the trial court ordered turnover of the
unimproved lots, it agreed with Conley that the property containing his home
remained his homestead.Â  

Â 





[3]Driver
also claims that Conley was improperly bench warranted to allow for his
presence at the turnover hearing.Â  We do
not address the merits of that claim because that issue was waived.Â  ÂAs a prerequisite to presenting a complaint
for appellate review, the record must show thatÂ a Âcomplaint was made to the
trial court by a timely request, objection, or motion.Â Â Tex. R. App. P. 33.1.Â  ÂA ÂtimelyÂ objection is one interposed at a
point in the proceedings which gives the trial court the opportunity to cure
any alleged error.ÂÂ  Solomon v. Steitler, 312 S.W.3d 46, 58 (Tex. App.ÂTexarkana 2010,
no pet.).Â  Moreover, Âa party will not be
allowed to complain on appeal of an action or ruling which she invited or
induced.Â Boufaissal v. Boufaissal,
251 S.W.3d 160, 162 (Tex. App.ÂDallas 2008, no pet.).Â  

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  At
an earlier attempted hearing on the turnover motion, the question of notice to
Conley was addressed.Â  After a short
discussion, the trial court suggested, Â[L]etÂs . . . see whether or not we can
bench warrant [Conley] backÂ for the hearing.Â 
DriverÂs counsel replied, ÂOkay.Â 
That would certainly be easier for me, because I donÂt represent
him.ÂÂ  At the hearing, counsel agreed to,
and did, send a letter to Conley advising him that the court was issuing a
bench warrant for his appearance at the next hearing date.Â  No objection to the courtÂs decision to issue
a bench warrant was made. Â Only after the
trial court ruled Conley was entitled to exercise his homestead exemption did
DriverÂs counsel file a motion to reconsider, raising an objection to the
issuance of the bench warrant for the first time. Â This point of error was waived.Â  It is also worth noting that issuing a bench
warrant is a matter within the discretion of the trial court.Â  See In re
Z.L.T., 124 S.W.3d 163, 164 (Tex. 2003).





[4]We
also note that a major point of contention in this case was ConleyÂs claim that
he was common-law married to Marta Moncoda.Â Â 
The Constitution currently provides that Â[a]n owner or claimant of the
property claimed as homestead may not sell or abandon the homestead without the
consent of each owner and the spouse of each owner.ÂÂ  Tex.
Const. art. XVI, Â§ 50(b).Â  Because
Conley could make his homestead claim as a single adult, we need not address
the issue of whether he was common-law married.





[5]In
any event, Âit is well settled that a conveyance of exempt property may not be attacked on the ground that it was made
in fraud of creditors.ÂÂ  Duran, 71 S.W.3d at 842Â43 (emphasis
added).

Â 





[6]For
the first time on appeal, Driver contends Conley has Âunclean handsÂ because
Â[i]t is unconscionable for a party to claim the benefit of a homestead
exemption while using the very home at issue to commit sexual assaults of a
minor.ÂÂ  This issue was not presented to
the trial court, and we need not consider it.